[No. 35464.    Department One.    January 12, 1961.]

RICHARD A. CHIAROVANO, *as Trustee, Respondent*, v. HARRY BUTTNICK *et al., Appellants.*[1]

*Jack Steinberg,* for appellants.

*Robert H. Peterson* (of *Peterson & Peterson*), for respondent.

MALLERY, J.—This action was instituted by a trustee in bankruptcy to set aside, as an illegal preference, a payment made by the bankrupt to the defendants.

Nathan's Clothes Shop, Inc., the bankrupt (hereinafter referred to as Nathan's), was a clothing store in Tacoma.

[1]Reported in 358 P. (2d) 305.

Prior to January 1, 1958, Nathan's was in arrears in the amount of five hundred twenty-five dollars on account of merchandise bought from the defendants. On December 15, 1958, the defendants filed suit for the amount, and, on December 18th, their attorney accompanied a Pierce county deputy sheriff with a writ of attachment to Nathan's for the purpose of serving it. To avoid being put out of business during the Christmas season, Obert T. Dale, president and principal owner of the bankrupt corporation, sought a compromise, and, when he learned this would be impossible, he went to his friend Boris Portnoy and asked for a loan.

The only evidence relating to the transaction is found in the cross-examination of Obert T. Dale, who testified as follows:

"Q. Did you go out of the store to inform him (Portnoy) of your financial predicament? A. I asked him to come into the store. You were standing there. Q. What did you tell him that led him to get $600? A. You said if I didn't have the money that you would take a thousand dollars' worth of merchandise out of my store. Q. And what did he say to that? A. He said to you, he said, 'May be I can loan you a couple of hundred dollars a week.' I said I would send you the balance in two - three payments. Q. And what kind of an answer did you get to that proposition? A. You said, no, that you would not take anything less than the full payment. Q. Then what did he do, if anything, to this response? A. He went across to the bank and got the money. . . . Q. This was more or less an emergency loan to you by Mr. Portnoy, is that it? A. It was a case of paying you or you would take merchandise out of my store. Q. He did this as an accommodation to you, did he? A. That is right. Q. Is that the reason why he gave you the money or did he owe you the money? A. He didn't owe me anything. Q. He gave you this to take care of an emergency? A. He loaned it to the corporation to pay me [you]. Q. Is that the reason why he gave you the money? A. That is right. Q. He wouldn't have given you the money otherwise? A. I had no reason to ask him for it."

When Portnoy returned from the bank with six hundred dollars, Dale added ten dollars from the cash drawer and gave six hundred ten dollars to the defendants' attorney,

544

who satisfied the claim of five hundred twenty-five dollars, plus interest, and dismissed the suit and attachment.

On February 6, 1959, less than four months after the payment to the defendants, Nathan's was declared a bankrupt in the United States District Court. The trustee in bankruptcy then filed the instant suit alleging that the payment of the six hundred ten dollars to the defendants constituted an illegal preference under the terms of 11 U.S.C.A. § 96, the Federal Bankruptcy Act. The trial court found for the plaintiff and ordered the defendants to return the payment to the trustee. The defendants appeal.

For a payment to constitute an illegal preference, it must cause a *diminution of* the *assets* of the bankrupt which are available for the payment of the general creditors. *Seattle Ass'n of Credit Men v. Luster,* 37 Wn. (2d) 192, 222 P. (2d) 843. Thus, if an asset would never have been available for general creditors and only came into the bankrupt's hands for the special and exclusive purpose of paying a single creditor, there has been no diminution of the bankrupt's assets. This principle is applicable where money is borrowed from a third party to pay a particular creditor, the third party in effect, merely taking the place of the creditor.

Such payments do not constitute an illegal preference so long as the transaction is under the control of the *third* party rather than the bankrupt. *McKay v. Sperry Flour Co.,* 95 Wash. 209, 163 Pac. 377; *Stewart v. Platt,* 101 U. S. 731, 25 L. Ed. 816. See, also, 6 Am. Jur., Bankruptcy, 1177, § 1053. In 130 A. L. R. 958, the law is stated as follows:

" . . . no preference within the inhibitions of the Bankruptcy Act is created where the payment or transfer by the third person, or with funds or property furnished by the third person, is so controlled by him that the funds or property never become part of the general assets of the bankrupt, but on the contrary, if they ever reach the hands of the bankrupt, are there only on condition or trust annexed that they be used for the purpose of paying the creditor. . . ."

This rule is applicable to the instant case because the Portnoy loan of six hundred dollars never became "part

of the general assets of the bankrupt" available for payment of general creditors. Portnoy loaned the money for the sole and exclusive purpose of paying the claim of the defendants. He would not have made it for the benefit of general creditors. We reach this conclusion because Dale's description of the transaction is uncontroverted, and Portnoy was, in effect, merely substituted for the defendants as a general creditor. The creditors were thus in the same position as if the transaction had not taken place.

We hold that the payment, except for the ten dollars taken from the cash drawer, did not constitute an illegal preference.

The judgment is reversed.

WEAVER, C. J., DONWORTH, OTT, and HUNTER, JJ., concur.