**In re Theodore Allen CASTILLO, Elizabeth Castillo, Debtors.**

**Joseph A. GENOVA, Jr., Trustee, Plaintiff,**

**v.**

**RIVERA FUNERAL HOME, Defendant.**

**Bankruptcy No. 83 M 2021.**

United States Bankruptcy Court, D. Colorado.

April 30, 1984.

Joseph Genova, Jr., Pueblo, Colo., pro se.

Joe T. Ulibarri, Pueblo, Colo., for defendant.

MINUTES OF HEARING, FINDINGS OF FACT, CONCLUSIONS AND ORDER ON TRUSTEE'S COMPLAINT TO VOID PREFERENCE AND FOR TURNOVER

JOHN F. McGRATH, Bankruptcy Judge.

This matter comes before the Court upon the Trustee's Complaint for Avoidance of a Preferential Transfer and for Turnover. A hearing was held on February 13, 1984. The facts of the case are undisputed.

The Debtors contracted for, and obtained, the services of the Defendant, Rivera Funeral Home (Rivera). The Debtors executed a note for $2,306.00 in favor of Rivera and paid this amount down until June 29, 1983, at which time there was a balance due of $1,463.25. Rivera then demanded payment of the balance and the

Debtors went to Minnequa Bank of Pueblo (Bank) on June 29, 1983, and borrowed that amount. The Debtors executed a note for principal and interest in favor of the Bank for $1,733.28. The note ·called for 24 monthly payments of $72.22. Rivera co-signed this note and also signed a guaranty agreement. The Bank drew a check to the order of Rivera on the same day, June 29, 1983.

The Debtors filed their voluntary Chapter 7 petition on September 12, 1983. When the Bank received notice of the Debtors' bankruptcy, they called on the guarantor and co-signer, Rivera, to pay off the note. Rivera paid the Bank $1,462.07. The Trustee claims that the initial payment by the Bank to Rivera was a preferential transfer since all the elements of section 547(b) of the Bankruptcy Code have been satisfied.

The first element of a preferential transfer as set forth in section 547(b) requires that there be a transfer of property of the debtor. As a general rule, *Colliers* states that when a third person makes a loan to the debtor specifically to enable him to satisfy the claim of a designated creditor, the proceeds never become part of the debtor's assets, and therefore, no preference is created. *4 Colliers on Bankruptcy*, ¶ 547.25 at 547–94 (15th ed., 1983). *Colliers* continues to state that the rule is the same regardless of whether the proceeds of the loan are transferred directly by the lender to the creditor or are paid to the debtor with the understanding that they will be paid to the creditor in satisfaction of his claim, so long as such proceeds are clearly "earmarked." Supra, at 547–94 and 95. Because there has been no transfer of the debtor's property, there has been no diminution of the debtor's estate, and consequently, there has been no preference. See *Grubb v. General Contract Purchase Corp.*, 18 F.Supp. 680, 682 (S.D.N.Y.1937), aff'd, 94 F.2d 70 (2d Cir.1938); *In re Loring*, 30 F.Supp. 758 (D.Mass.1939); *Chiarovano v. Buttnick*, 358 P.2d 305, 57 Wash.2d 542 (1961); *In re Erie Forge Steel Corporation*, 456 F.2d 801 (3rd Cir.1972);

*Interstate National Bank of Kansas City v. Luther*, 221 F.2d 382 (10th Cir.1955).

Cases subsequent to the Bankruptcy Code's enactment have also held that for a preference to be voided it is essential that the debtor have an interest in the property transferred so that the estate is thereby diminished. *Matter of Lucasa Intern., Ltd.*, 13 B.R. 596 (Bkrtcy.N.Y.1981); *In re Moskowitz*, 13 B.R. 357 (Bkrtcy.), Appeal denied, 14 B.R. 307 (D.C.N.Y.1981). Similar language can be found in *In re Brent Explorations, Inc.*, 31 B.R. 745 (Bkrtcy. Colo.1983). *In re American Properties, Inc.*, 14 B.R. 637, 641 (Bkrtcy.Kan.1981) discussed the rule that payment by a third party of a particular debt owed by the bankrupt does not create a voidable preference because the debtor's estate is not diminished, and it "agreed with the rule as enunciated by *Colliers* on these cases," although the court found the rule inapplicable to the facts of its case. The holding of *In re Sun Railings, Inc.*, 5 B.R. 538 (Bkrtcy.Fla.1980) also supports this rule. In this case, the debtor borrowed money from a third party in order to pay the defendant $40,000.00. The funds were "expressly earmarked by the third party for payment to the defendant." After stating that cases decided under section 60(a) of the Bankruptcy Act remained applicable on this subject, the court stated "when a third party loans money to a debtor for the specific purpose of repaying a designated debt, the money never becomes part of the estate available for distribution to all creditors, and therefore, no preference is created." *4 Colliers on Bankruptcy*, ¶ 547.25 n. 6.

In a recent case, *Matter of Villars*, 35 B.R. 868, 872 (Bkrtcy.Ohio 1983), the court stated "both parties and *Colliers* place undue emphasis on semantics as to whether the proceeds of the debtor's operating loan were 'earmarked' . . . ." The debtor was a farmer who received loans for operating expenses each year from a credit association. The debtor owed $21,167.12 to the defendant, Settlemyre Seed Company, for fertilizer and supplies. Settlemyre approached the credit association, with whom

it had done business before, and induced the issuance of a check for payment of the outstanding account in full. The check was made payable to *both* the debtor, Villars, and Settlemyre. Villars endorsed the check over to Settlemyre on November 23, 1981. Villars filed his petition for relief under Chapter 7 on January 14, 1982. After deciding that payment on the account was payment of an antecedent debt, the court discussed the issue relevant to our facts

> The placing of Defendant's name on the check as drawn and whether the funds thereby were "earmarked" is not dispositive of the issue. Such is not the thrust of the cited authorities and the use of the term as a dispositive rule would be an exaggeration ... As soon as the check was drawn payable to the order of Villars it became property to him. Whether or not there was some nature of "earmarking" begs the question. If the Debtor did not choose to increase his secured loan, to pay the Defendant, *he had the absolute control over these funds in the sense that the Defendant had no legal right to force him to make an endorsement.* (Emphasis supplied.)

The court went on to find a preferential transfer for it felt that by paying the defendant the funds (by endorsement) the debtor had depleted his estate.

In this case, it is undisputed that the Bank made Rivera the sole payee on the check. Unlike the debtor in *Matter of Villars,* supra, the debtor had no control over the use or disposition of the funds. The money was never available to satisfy the claims of general creditors. There was nothing more than a substitution of one creditor for another and no diminution of the debtor's estate resulted. *In re Sun Railings, Inc.,* supra, at 539. Consequently, the Trustee's attempt to void the transfer by the Bank to Rivera falters at the very start, as there was no transfer of the Debtor's property or diminution of the estate.

This finding renders moot Rivera's assertion that, should a preferential transfer be found, it is entitled to setoff what the debtor owes him for services against the amount of the preference the Trustee attempted to collect.

WHEREFORE, IT IS ORDERED that the Trustee's Complaint be and the same is hereby dismissed.