837 F.2d 325
 18 Collier Bankr.Cas.2d 717, Bankr. L. Rep. P 72,183
In re TITAN ENERGY, INC.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Appellant,
v.
TITAN ENERGY, INC., et al., Appellees.
 No. 86-2426.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 13, 1987.
Decided Jan. 19, 1988.
 
 Benjamin F. Mann, Kansas City, Mo., for appellant.
 James O. Castagnera, W. Jeffrey Garson, Philadelphia, Pa., for appellees.
 Before FAGG, Circuit Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.
 BRIGHT, Senior Circuit Judge.
 
 
 1
 This case has its genesis in a suit by insurer National Union to absolve itself of its responsibilities under certain insurance policies issued to Titan Energy, Inc. (Titan), the debtor now under Chapter 7. The policies indemnify Titan against all losses Titan might suffer as a result of claims arising from the performance of seven ethanol plants. One plant purchaser, Butcher Capital Market, Inc. (Butcher), has sought collection of the policy proceeds in Louisiana state court, and its suit is currently pending. Subsequent to Butcher's filing, National Union brought an action in bankruptcy court for declaratory and injunctive relief, alleging that the policies are void due to misrepresentation, and requesting that Butcher's state court action be stayed pursuant to the Bankruptcy Code's automatic stay provision. The bankruptcy court dismissed National Union's action for lack of jurisdiction and the district court affirmed on the same ground. National Union appeals the bankruptcy and district courts' jurisdictional rulings, arguing that its action both arises under, and is related to, Titan's bankruptcy proceeding, and thus falls within the ambit of the bankruptcy court's jurisdiction pursuant to 28 U.S.C. Sec. 1334 (Supp. II 1984).
 
 
 2
 Butcher, the party filing the opposing brief, claims no jurisdiction exists in the bankruptcy court to adjudicate the insurer's contentions. We hold that the bankruptcy court does possess jurisdiction over National Union's action, but that abstention principles validate that court's refusal to hear the case. Thus, we reverse the district and bankruptcy courts' jurisdictional ruling and remand with instructions that the bankruptcy court abstain pending disposition of these issues in Butcher's state court action.
 
 I. BACKGROUND
 
 3
 On December 30, 1983, Titan sold seven ethanol alcohol plants located in Iberia Parish, Louisiana (Iberia Plants), to three limited partnerships formed by and managed by Park Ryan Development Company, Inc. (Park Ryan) and Butcher Capital Markets, Inc. (Butcher). Hereinafter we refer to the partnerships as Butcher because the record indicates that, as managing partner, Butcher is the real party in interest in this lawsuit.[1]
 
 
 4
 Prior to the sale, appellee National Union issued third-party liability policies termed "product guarantee legal liability policies" (policies) indemnifying Titan for all losses it may incur as a result of claims arising from the performance of the Iberia Plants. The policies insured against claims made during the policy period for damages due to defects in the Iberia Plants. Under the terms of the policies, a plant defect includes "the failure of the plants to perform the function for which they were maintained, sold or distributed."
 
 
 5
 Butcher and Park Ryan purchased the Iberia Plants on December 30, 1983. In June 1985, Butcher filed an action in Louisiana state court alleging that the plants were defective in that they "failed to perform the functions for which they were manufactured, sold, or distributed." Butcher predicated Titan's liability on several theories: negligence, misrepresentation, the sale of goods containing redhibitory defects, and breach of contract. Butcher argued that Titan's misfeasance in selling the uncompleted Iberia Plants came within the coverage of the policies and that National Union breached its obligation under the policies in failing to respond to Butcher's damage claims. Butcher thus sought to collect $6,000,000,[2] plus interest, directly from National Union pursuant to the Louisiana Direct Action Statute. See La.Rev.Stat.Ann. Sec. 22:655 (West 1978).
 
 II. PROCEEDINGS BELOW
 
 6
 In July 1985, National Union filed a five-count complaint in bankruptcy court seeking various forms of relief regarding the liability policies issued to debtor Titan. In its complaint, Union sought (1) rescission of the policies; (2) a declaratory judgment regarding the scope of coverage; and (3) a declaration that any proceeds under the policies constitute property of Titan's estate. Additionally, Counts IV and V requested the court stay Butcher's Louisiana state court action.
 
 
 7
 In November 1985, the bankruptcy court sua sponte issued an order to show cause why the action should not be dismissed. Following briefing by the parties, the bankruptcy court dismissed the action, finding that bankruptcy court jurisdiction did not exist over claims brought between strangers to the bankruptcy estate, which relate to matters outside bankruptcy court jurisdiction. The bankruptcy court also discussed abstention and concluded that even if that court did enjoy jurisdiction, it "can and should await the resolution of the state court action."[3]
 
 
 8
 On appeal, the supervising district court affirmed the bankruptcy court's order of dismissal, finding (1) the insurance policies were not part of the debtor's estate, and therefore National Union's action did not come within the jurisdiction of the bankruptcy court; and (2) the bankruptcy court properly refused to stay the Louisiana state court action because the dispute arises out of state law, and its resolution would have no detrimental effect on the debtor's estate. This appeal followed.
 
 III. DISCUSSION
 A. Bankruptcy Court Jurisdiction
 
 9
 Section 157(b)(1) of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (B.A.F.J.A.) authorizes bankruptcy judges to hear "all core proceedings arising under title 11," while section 157(c)(1) confers jurisdiction on a bankruptcy judge to hear "a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," subject to de novo review by the district court.[4] National Union contends that its request for injunctive relief "arises under title 11" for the purposes of section 157(b)(1), and that its requests for declaratory relief are "related to" debtor Titan's bankruptcy case for the purposes of section 157(c)(1). We discuss these contentions below.
 
 
 10
 B. Core Jurisdiction--Injunctive and Declaratory Relief
 
 
 11
 National Union's complaint seeks a declaration that the policies constitute property of debtor Titan's estate; and seeks an injunction, staying Butcher's Louisiana state court action pursuant to section 362 and section 105 of the Bankruptcy Code.[5]
 
 
 12
 In support of jurisdiction, National Union argues first that the policies constitute property of Titan's estate as defined by section 541 of the Bankruptcy Code, and, second, that if the policies are property, then Counts III, IV and V are core proceedings "arising under" sections 157(b)(2)(A) and (G).[6]
 
 
 13
 Though Titan's interest in the policies is somewhat attenuated, they are the named insured and we hold that the policies are property of Titan's estate under the expansive definition set forth in section 541 of the Bankruptcy Code. That section includes within a debtor's estate "all legal or equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. Sec. 541(a)(1) (1982).
 
 
 14
 The Supreme Court recognized the broad scope of section 541(a)(1) in holding that a debtor's estate encompasses property in which a creditor has a secured interest. United States v. Whiting Pools, Inc., 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The Ninth Circuit, in In re Bialac, 712 F.2d 426 (9th Cir.1983), stated that section 541(a)'s definition of property "was intended to be broad and all-inclusive." Id. at 430. More recently, that circuit defined a debtor company's directors and officers liability policy as property of that debtor's estate because the estate "is worth more with them than without them." In re Minoco Group of Companies, Inc., 799 F.2d 517, 519 (9th Cir.1986). The First, Fourth and Fifth Circuits have characterized a debtor's insurance policy as property of a debtor's estate as well. See Tringali v. Hathaway Mach. Co., 796 F.2d 553 (1st Cir.1986) (holding that the language of section 541(a)(1) is broad enough to cover an interest in liability insurance); A.H. Robins Co. v. Piccinin, 788 F.2d 994 (4th Cir.1986); In re Davis, 730 F.2d 176 (5th Cir.1984); see also In re Johns-Manville Corp., 40 B.R. 219 (S.D.N.Y.1984). But see In re Louisiana World Exposition, Inc., 832 F.2d 1391 (5th Cir.1987) (holding that policies covering only the liability exposure of the directors and officers of a debtor company and payable only to the directors and officers themselves and not the corporation are not property of the debtor's estate.)
 
 
 15
 The cases cited by Butcher in arguing that the policies should not be considered property of Titan's estate are inapposite. In re North American Marketing Corp., 24 B.R. 16 (Bankr.S.D.Fla.1982), concerns a supersedeas bond posted by the debtor to stay execution of a state judgment levied against debtor in favor of a bank. Unlike the policies at issue, which may benefit Titan's general creditors, the bond in North American Marketing required either that the debtor pay over a money market certificate to the bank, or comply with the state judgment. Id. at 18. No possibility existed that the bond would be a factor in the reorganization of debtor's estate. The same can be said for the loan proceeds excluded from debtor's property in In re Castillo, 39 B.R. 45 (Bankr.D.Colo.1984). The loan proceeds, at issue in Castillo, paid to debtor's creditor by the bank as guarantor and co-signer of debtor's note, were "never available to satisfy the claims of general creditors" and thus the court held "no diminution of the debtor's estate resulted". Id. at 47. See also Mid-Jersey Nat'l Bank v. Fidelity Mortgage Investors, 518 F.2d 640, 644 (3d Cir.1975) (excluding bond from debtor's estate because "the deposit serving as a supersedeas [bond] is not available to the reorganization court to aid in the execution of the plan in the Chapter XI proceeding").
 
 
 16
 In the instant case, if the policies are held to cover the damage claims, that holding will reduce the total amount of damage claims lodged against the estate. If the court finds coverage lacking, then Butcher will join the general creditor queue, and each creditor will receive a smaller share of the Titan pie. Though the policy proceeds do not flow directly into the coffers of the estate, they do serve to reduce some claims and permit more extensive distribution of available assets in the liquidation of the estate. Like the policies in In re Minoco, supra, the policies here are property of Titan's estate because the estate is worth more with them than without them. Because Counts III, IV and V seek relief regarding these policies, the bankruptcy court possesses jurisdiction over these matters.
 
 
 17
 C. Related Jurisdiction--Declaratory Judgment
 
 
 18
 National Union further seeks rescission of the policies, and a declaratory judgment as to the extent of coverage. A proceeding to determine National Union's rights and obligations under the policies is "related to" Titan's title 11 case for purposes of jurisdiction if "the outcome * * * could conceivably have any effect on the estate being administered in bankruptcy." Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984); accord National City Bank v. Coopers and Lybrand, 802 F.2d 990 (8th Cir.1986); In re Dogpatch U.S.A., Inc., 810 F.2d 782 (8th Cir.1987). It remains to be seen whether, and to what extent, National Union's action will affect Titan's estate. Yet, even a proceeding which portends a mere contingent or tangential effect on a debtor's estate meets the broad jurisdictional test articulated in Pacor. For the reasons set forth in section B, we determine that the resolution of Counts I and II could conceivably have an impact on Titan's estate. Thus, we conclude that the bankruptcy court has jurisdiction to hear National Union's non-core, but related claims.
 
 D. Abstention
 
 19
 Despite our determination that the bankruptcy court could properly hear National Union's action, we support Bankruptcy Judge Stewart's refusal to do so.[7] As Judge Stewart noted, "there is a limited discretion available to a bankruptcy court to require matters to be litigated in state courts even where jurisdiction exists in the bankruptcy court."[8] We agree that in this case, the better part of discretion counsels abstention.
 
 
 20
 Abstention is appropriate for a number of reasons. First, the policy concerns which motivated other appellate and district courts to exert jurisdiction over a debtor's insurance policy and stay all state proceedings regarding those policies are not present here. See Tringali v. Hathaway Mach. Co., 796 F.2d 553 (1st Cir.1986); A.H. Robins Co. v. Piccinin, 788 F.2d 994 (4th Cir.1986); In re Davis, 730 F.2d 176 (5th Cir.1984); In re Johns-Manville Corp., 40 B.R. 219 (S.D.N.Y.1984). The facts in Robins, Davis, Tringali and Johns-Manville differ significantly from the case at bar, and the reasons for exerting jurisdiction in those cases do not exist here.
 
 
 21
 In the above cases, numerous creditors claimed entitlement to a debtor's insurance policy, the proceeds of which were inadequate to satisfy a large or growing list of claimants. Further, the debtor in those cases intended to resume business after concluding its Chapter 11 reorganization proceedings. Allowing one claimant to collect the policy proceeds in a state court judgment would, in those cases, deplete the insurance pool to the detriment of all remaining creditors. Further, disbursing the policy proceeds in such a haphazard manner could slow the debtor's reorganization effort. Recognizing these hazards, the courts above shared two common goals--to insure equitable division of a limited insurance fund, and to facilitate the debtor's swift and efficient reorganization. See Tringali, 796 F.2d at 563 (court refused to lift the stay preventing plaintiff's state court suit from going forward, noting that "the bankruptcy court, * * * is in the best position to resolve the parties' arguments in light of potential competing claims by other creditors"); A.H. Robins v. Piccinin, 788 F.2d 994 (4th Cir.1986) (court enjoined plaintiff's state court action against debtor's insurer, where debtor faced over 5,000 lawsuits and the liability insurance was deemed inadequate to satisfy all claims under the insurance); Davis, 730 F.2d at 185 n. 26 (bankruptcy court properly asserted jurisdiction over insurance policies based on its finding that "the integrity of the debtor's estate must be preserved to provide an equitable distribution of recovery among future as well as present claimants"); Johns-Manville, 40 B.R. 219 (S.D.N.Y.1984) (affirming bankruptcy court's stay of state court proceedings where creditors' claims totaled more than $2,000,000, exceeding both debtor's insurance policy and entire net worth).
 
 
 22
 In the instant case, we need not be concerned that allowing Butcher's action to proceed in state court will skew division of the policy proceeds. The policies benefit the plant purchasers, Butcher and Park Ryan, and the record indicates that no other parties apart from Butcher have filed claims under the policy. National Union argues that several individual investors have filed proofs of claim in Titan's bankruptcy proceeding which "would allegedly invoke coverage under the policies."[9] However, National Union has produced no evidence indicating that these investors seek payment under the insurance policy fund, as opposed to Titan's general assets.[10] Moreover, even if these individuals did invoke the policy's coverage, their claims comprise a minute fraction of the total policy proceeds.
 
 
 23
 As previously noted, the desire to aid a debtor's reorganization effort provides another strong impetus for courts to exert jurisdiction over a debtor's insurance policies.[11] The debtors in Tringali, Davis, and Johns-Manville, all engaged in Chapter 11 proceedings, and this fact figures prominently in those courts' reasoning. For instance, the Tringali court stated that excluding the policy from debtor's estate could "prevent a bankruptcy court from marshalling the insurance proceeds and, along with other assets, arranging for their distribution so as to maximize their ability both to satisfy legitimate creditor claims and to preserve the debtor's estate." Tringali, 796 F.2d at 560 (emphasis added). See also Johns-Manville, 40 B.R. at 230 ("[s]tays against proceedings in other courts are issued pursuant to the bankruptcy court's authority to protect the debtor's estate and its ability to undertake the reorganization process"); In re Mego Int'l, Inc., 28 B.R. 324, 326 (Bankr.S.D.N.Y.1983) (holding that a debtor company's insurance contract and any proceeds payable constitute property of that company's estate on the grounds that any monies received under the policy would "increase the total assets available for Mego's [the debtor's] creditors and thus impact directly upon the reorganization.")
 
 
 24
 We need not worry that Butcher's state court proceeding will hinder the reorganization of Titan's estate, and slow its return to business. In March 1986, Titan abandoned its attempts to reorganize and converted its case from a Chapter 11 to a Chapter 7 proceeding. National Union urges this court to disregard Titan's conversion because Titan had filed under Chapter 11 when National Union brought this suit and "a court's jurisdiction depends upon the facts existing at the time the jurisdiction was invoked * * *." Appellant's Brief at 23 (quoting In re Stahl, Asano, Shigetomi Assocs., 36 B.R. 179, 182 (Bankr. D. Haw. 1983)). However, this court may consider the current financial situation of the parties when considering abstention. Titan's shift from Chapter 11 to Chapter 7 proceedings relieves us of the Johns-Manville, Davis and Tringali courts' concern that allowing a related state court action to proceed will hinder debtor's return to business. Thus, abstention presents itself as a suitable option here, where it was not in those cases.
 
 
 25
 Where a state court proceeding sounds in state law and bears a limited connection to debtor's bankruptcy case, abstention is particularly compelling. See, e.g., In re Futura Indus., Inc., 69 B.R. 831, 835 (Bankr.E.D.Pa.1987).
 
 
 26
 National Union requests a declaration that the policies issued to Titan do not cover Butcher's claims. In the alternative, National Union argues that the policies are void because Titan made certain misrepresentations to induce National Union to assume coverage. These claims require interpretation of the insurance contract in accordance with state law contract doctrines. This determination involves precisely the type of issues which the Supreme Court in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), deemed best left to state courts to resolve. See In re Wisconsin Barge Line, Inc., 63 B.R. 40 (Bankr. E.D.Mo.1986) (bankruptcy court abstained from exercising jurisdiction where insurance company's action for payment under letter of credit based solely on state law); accord In re P & P Oilfield Equip., Inc., 71 B.R. 621 (Bankr.D.Colo.1987) (bankruptcy court abstained from hearing Chapter 7 trustee's state law contract action to recover accounts receivable).
 
 
 27
 Moreover, the resolution of National Union's claims may have only a peripheral impact on Titan's estate.[12] If the policies do cover Butcher's damages, Titan will have $6,000,000 less claims lodged against its general assets. If the suit fails, the claims may be asserted against the estate. That contingent interest of the estate, however, should not preclude abstention particularly where, as here, the trustee expresses no interest in litigating the insurance coverage questions in bankruptcy court.[13]
 
 
 28
 In In re Kennedy, 48 B.R. 621 (Bankr.D.Ariz.1985), the bankruptcy court refused to hear one non-debtor's claim against another where it was unclear that the claim would have any direct impact on the debtor's estate. In that case, several defendants accused of fraud in a state court action sought the bankruptcy court's jurisdiction on the ground that if they were found liable, they would seek indemnification and/or implead debtors into the state action. The court noted that "[i]n its present configuration, the state litigation is only a precursor to defendants' potential indemnification claims against debtors." Id. at 622. Further, the court observed that "[n]o state judgment [had] been rendered and no request [had] been made to allow debtors to be named in the state court proceeding." Id. Because the state court action would have an effect on debtor's estate only if certain contingencies occurred, the bankruptcy court refused to exercise its jurisdiction and remanded the case back to the state court.
 
 
 29
 As in Kennedy, the instant action was brought by one non-debtor against another non-debtor, and will have an effect on debtor's estate only if certain contingencies occur. Butcher's action against National Union will only affect Titan if Butcher does not prevail against National Union and seeks recovery of the full amount of all its claims against Titan. The bankruptcy court need not exercise its jurisdiction where the nexus between the related state court action and debtor's estate is so attenuated. See In re Futura Indus., Inc., 69 B.R. 831, 835 (Bankr.E.D.Pa.1987) ("[t]he degree to which the related proceeding is related to the bankruptcy case, as a practical matter, will doubtless be an important factor in the decision whether to abstain") (citing In re Salem Mortgage Co., 783 F.2d 626, 635 (6th Cir.1986)).
 
 
 30
 Abstention is further appropriate where the action could not have been commenced in federal court absent bankruptcy jurisdiction and the issues can be timely adjudicated in state court.[14] See In re Futura Indus., Inc., 69 B.R. 831 (Bankr. E.D.Pa. 1987). No diversity jurisdiction exists between National Union and Butcher, nor does National Union's claim raise any federal question entitling the parties to be heard by a federal court. Moreover, nothing in the record suggests this action could not be timely litigated in Louisiana state court.
 
 
 31
 National Union argues that its complaint raises issues which could not be adjudicated in Butcher's Louisiana lawsuits. The Louisiana suits, National Union claims, "concern whether Titan breached its duties to Butcher, not whether Titan misrepresented facts to National Union in order to secure the policies, and not whether the claims asserted against Titan in its bankruptcy case are within the scope of coverage of the policies issued by National Union to Titan."
 
 
 32
 Our review of Butcher's Louisiana complaint indicates that National Union has mischaracterized that action. While most of the counts in Butcber's complaint are directed against Titan and concern the sale agreement between Titan and Butcher, Count 32 of the complaint alleges that Titan's various actions in breach of the contract are "covered and insured events under the policies," and that National Union has breached its obligations to Butcher by failing to respond to Butcher's damage claims. Butcher's complaint asserts that the policies are valid and provide coverage for the complained of loss. Thus, we presume, National Union by appropriate pleading can place the issues of coverage and rescission before the court in Louisiana, which appears to be a proper forum for resolution of all issues.
 
 
 33
 National Union further argues that the Louisiana state court cannot adequately resolve the validity and scope of the insurance policies because Titan is not a party to that action. This argument does not carry much weight. National Union has only itself to blame for Titan's absence from the Louisiana lawsuit. When National Union complained to the bankruptcy court that allowing the Louisiana state court action to proceed would subject it to inconsistent judgments, the bankruptcy court explicitly invited National Union to obtain relief from the automatic stay for the purpose of joining Titan in the state court lawsuit. National Union did not respond to the court's suggestion and cannot now be heard to complain about the consequences.
 
 
 34
 In summary, we hold that the bankruptcy court can exercise jurisdiction over National Union's action, but that that court should abstain from proceeding with the resolution of the case. National Union's action requires a determination of state law contract issues and relates only peripherally and contingently to Titan's estate. Because the policies primarily benefit Butcher, and because no other parties have asserted claims alleging coverage, the validity and scope of the policies may be adjudicated in state court without fear that other creditors or Titan itself will be irreparably harmed. Similarly, because Titan has converted from a Chapter 11 to Chapter 7 proceeding, we have no reorganization process to protect. National Union's action could not, absent bankruptcy court jurisdiction, be brought in federal court and the issues it raises can be timely adjudicated in the pending Louisiana state court action. Finally, we note that co-defendants and insurers are not the intended beneficiaries of the automatic stay granted to the reorganizing debtor. In re White Motor Credit Corp., 37 B.R. 631, 644 (N.D.Ohio 1984), aff'd and remanded, 761 F.2d 270 (6th Cir.1985).[15]
 
 
 35
 For the reasons set forth above, we reverse and remand to the district court to instruct the bankruptcy court to reinstate the action for the purposes of lifting the automatic stay barring Butcher's state court action, but abstain from all further proceedings pending disposition of Butcher's action in state court.[16]
 
 
 36
 No costs are awarded to any party.
 
 
 
 [1]
 Though Park Ryan has been served each paper in the instant lawsuit, it has not appeared in this action
 
 
 [2]
 Butcher, in its role as managing partner of two of the limited partnerships which purchased the plants, sued National Union. Those two partnerships filed virtually identical complaints, each claiming that its damages exceeded the amount payable under the policies and seeking $3,000,000, plus interest and costs and attorneys' fees
 
 
 [3]
 In re Titan Energy, Inc., 57 B.R. 498, 501 (Bankr.W.D.Mo.1986)
 
 
 [4]
 Section 157(b)(1) states, in pertinent part:
 Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
 28 U.S.C. Sec. 157(b)(1) (Supp. III 1985).
 Section 157(c)(1) states, in pertinent part:
 A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.
 28 U.S.C. Sec. 157(c)(1) (Supp. III 1985).
 
 
 [5]
 Section 362 of the Bankruptcy Code provides for an automatic stay of all proceedings against a debtor's property. 11 U.S.C. Sec. 362 (1982 & Supp. IV 1986) Section 105 of the Bankruptcy Code permits the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Id. Sec. 105
 
 
 [6]
 Sections 157(b)(2)(A) and (G) include as core proceedings, "matters concerning the administration of the estate," and "motions to terminate, annul or modify the automatic stay." 28 U.S.C. Sec. 157(b)(2)(A), (G) (Supp. III 1985)
 We give National Union the great benefit of the doubt in so interpreting their argument. National Union, in its brief and at oral argument, asserts that Count III "arises under" title 11 because the determination as to what constitutes property of a debtor's estate necessarily involves application of the definitional section of the Bankruptcy Code. See 11 U.S.C. Sec. 541 (1982 & Supp. IV 1986). Similarly, National Union contends that Counts IV and V "arise under" title 11 because the injunctive relief requested lies exclusively in the Bankruptcy Code. We reject these contentions. Following this line of reasoning, a bankruptcy court, having determined that a proceeding does not involve property of the estate, would nevertheless possess jurisdiction because the question presented in the litigants' brief required application of section 541 of the Bankruptcy Code. Clearly, this cannot be. A federal district judge does not have federal question jurisdiction merely because a litigant asserts such jurisdiction exists. Counts III, IV and V of National Union's complaint can only arise under title 11 if the insurance policies issued by National Union are, in fact, property of debtor Titan's estate. Our analysis focuses on whether or not the policies are property of Titan's estate as a basis for core jurisdiction.
 
 
 [7]
 Notwithstanding the fact that the district court did not reach the question of abstention, the bankruptcy court raised the issue sua sponte, and it has been argued before this court. Thus, we are entitled to reach this issue. See, e.g., Wycoff v. Menke, 773 F.2d 983, 984 (8th Cir.1985), cert. denied, 475 U.S. 1028, 106 S.Ct. 1230, 89 L.Ed.2d 339 (1986)
 
 
 [8]
 In re Titan Energy, Inc., 57 B.R. 498, 501 (Bankr.W.D.Mo.1986) (quoting In re Axton, 641 F.2d 1262, 1273 (9th Cir.1981)). The statutory provisions allowing for abstention are codified in 28 U.S.C. Sec. 1334(c)(1). Pursuant to this section, a bankruptcy judge may abstain from hearing a related proceeding "in the interest of justice or in the interest of comity with State courts or respect for State law * * *." 28 U.S.C. Sec. 1334(c)(1) (Supp. III 1985)
 
 
 [9]
 In its brief, National Union asserts that the proofs of claims filed in Titan's bankruptcy proceeding include one claim for $1,000,000 in damages by Park Ryan and two claims by individual investors, one for $60,999, another for $240,000. However, at oral argument, counsel for National Union admitted that Titan's creditors, Butcher aside, were few and that their individual claims did not exceed $100,000
 
 
 [10]
 As a prophylactic measure, however, the bankruptcy court should notify these creditors and inform them of Butcher's state court suit so that they may intervene and assert their interests
 
 
 [11]
 In United States v. Whiting Pools, Inc., 462 U.S. 198, 103 S.Ct. 2809, 76 L.Ed.2d 515 (1983), the Supreme Court included property subject to a creditor's lien as property of debtor's estate, in part "to facilitate the rehabilitation of the debtor's business * * *." Id. at 203, 103 S.Ct. at 2313
 
 
 [12]
 As discussed, such a resolution will have an impact sufficient to meet the Pacor test for establishing the existence of related jurisdiction, but is insufficient to require we exercise such jurisdiction
 
 
 [13]
 Titan has expressed no desire that the policy dispute be resolved in bankruptcy court. As Butcher points out, Titan is a party to this action and has been served with every paper filed therein. This action has been pending since July of 1985, and to this date, Titan has taken no position in this litigation, either before or after the trustee's appointment in March 1986. In its reply brief, National Union submitted an affidavit by Titan's trustee asserting that while the trustee did not feel it is in its interest to participate in judicial proceedings regarding jurisdiction, in the event that National Union's proceeding is addressed on the merits, the trustee does intend to participate and assert a claim for any premiums due Titan upon rescission of the policies. This affidavit, however, does not explain why Titan failed to intervene when its bankruptcy court and supervising district court both previously held that Titan has no interest in the National Union policies. Further, the affidavit only asserts that Titan has an interest in National Union's action to the extent that it seeks to recover the insurance policy premiums paid. This interest is called into doubt, however, by Butcher's assertion that it, and not Titan, paid the premiums, and by National Union's failure to produce any evidence to the contrary
 
 
 [14]
 That the action could not otherwise be commenced in federal court, and could be timely adjudicated in state court are two elements of the mandatory abstention provisions set forth in 28 U.S.C. Sec. 1334(c)(2) (Supp. III 1985). The other four elements are: (1) the parties file a timely motion; (2) the proceeding is based upon a state law claim or state law cause of action; and (3) the proceeding is related to a case under title 11 but does not arise under title 11. Where most of the criteria that Congress established for mandatory abstention have been met, "bankruptcy courts should give careful consideration whether it would be appropriate to exercise their discretion to abstain under section 1334(c)(1)." In re Futura Indus., Inc., 69 B.R. 831, 834 (Bankr.E.D.Pa.1987)
 
 
 [15]
 Technically, our determination that the policies are property of Titan's estate triggers the automatic stay provision of 11 U.S.C. Sec. 362, which prohibits any action against a debtor's property. However, subsection (d) allows the bankruptcy court to lift the stay "on request of a party in interest and after notice and a hearing." As our abstention discussion makes clear, following a proper motion and hearing, we would consider the bankruptcy court's grant of a motion to lift the stay entirely appropriate
 
 
 [16]
 "Permissive abstention requires the reorganization court in exercising its discretion to maintain ongoing supervision over these state court cases to ensure that disposition of no claim is unduly delayed because of the forum in which it is pending." In re White Motor Credit, 761 F.2d 270, 275 (1985)