In re **RUNAWAY II, INC., a Missouri Corporation, Debtor.**

**Bankruptcy No. 93–20831–C–11.**

United States Bankruptcy Court, W.D. Missouri, Western Division.

May 20, 1994.

John H. Lake, Rost & Lake, Jefferson City, MO, for respondent Wayne Royal and Debtor Runaway II, Inc.

Kenneth F. Crockett, Topeka, KS, for Art Ackerson.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

On November 15, 1993, Art Ackerson (Ackerson) filed an involuntary bankruptcy petition against Runaway II, Inc. (Runaway), a Missouri corporation, pursuant to 11 U.S.C. § 303 (1993). Runaway and Wayne Royal (Royal) filed a motion to dismiss. The Court held a hearing on the involuntary petition and the motion to dismiss on January 20, 1994. At that hearing, the Court deferred a ruling on the matter until such a time as an evidentiary hearing could be held on the following issues:

1) Are there less than 12 creditors?

2) Is Ackerson a creditor with standing to file an involuntary petition?

3) If a creditor, does Ackerson hold a claim of at least $5,000?

4) Is Runaway generally paying its bills as they come due?

Runaway and Royal filed an answer to the petition on March 10, 1994. On March 31, 1994, the Court held an evidentiary hearing on the issues outlined above. All parties had an opportunity to brief the issues. Having received those briefs and considered the evidence, the Court makes the following findings of fact and conclusions of law:

### I. Facts

The current case is only one of a series of legal battles between Royal and Ackerson over the control of Runaway. Royal and Ackerson are each 50% shareholders and the sole directors of Runaway. In addition to the current bankruptcy case, Royal and Ackerson have a Missouri state law action pending in Camden County Circuit Court. *See Ackerson v. Runaway II, Inc. and Wayne Royal,* Case No. CV191–630CC. Camden County Circuit Judge Mary Dickerson, with the consent of the parties, appointed Steven Akre as receiver for Runaway (the Receiver) on August 19, 1992. The state court scheduled a trial on the merits to be held on November 30, 1993, just 15 days prior to the filing of this involuntary bankruptcy petition. The parties have also been involved in a prior bankruptcy case. In that case, *In re Runaway II, Inc.,* Case No. 93–20462 (Bankr.

W.D.Mo. filed June 14, 1993), Ackerson, the alleged creditor here, filed a voluntary petition for bankruptcy on Runaway's behalf. During that case, Ackerson managed Runaway as the debtor-in-possession. The Court dismissed the voluntary petition on October 14, 1993. *See In re Runaway II, Inc.,* 159 B.R. 537 (Bankr.W.D.Mo.1993). The Court found that Ackerson alone did not constitute a majority of Runaway's board of directors. *Id.* Consequently, Ackerson was not authorized by the corporation to file a bankruptcy petition on its behalf. *Id.* The Court takes judicial notice of the prior bankruptcy case.

Runaway was formed in 1990 by Royal and Ackerson to run a 20 acres resort on the lake of the Ozarks. The resort consists of a lodge, restaurant, pool, extra hotel units, a "chalet", RV lots, and a boat dock. The real estate was originally purchased in 1990 by Royal and remains titled in his name. Ackerson was the on-site manager of the resort. Runaway leased the restaurant to Liars' Lair, a partnership in which Ackerson's wife is a general partner. In each year of its existence, Runaway reported a net loss on its federal tax forms.

There are nine alleged creditors: Dredging, Inc., Lakeland Petroleum, Wilkerson Excavating, the Receiver, First National Bank, an accountant, Liars' Lair, Royal, and Ackerson. Dredging, Inc. and Lakeland Petroleum have collection actions pending in state court. Wilkerson Excavating filed a mechanics lien to secure its debt. Ackerson is the sole petitioning creditor.

Of these creditors, Runaway and Royal only dispute the claims of Ackerson. Ackerson claimed in the involuntary petition to be owed $128,371.91. The debt purportedly represents salary claims and claims for loans advanced to the corporation. At trial, Ackerson introduced a letter of intent signed by Ackerson and Royal which indicated that Ackerson was to be paid an annual salary of $20,000. Neither Ackerson nor Royal have ever drawn a salary from Runaway. Ackerson also claims to have purchased four boats for the corporation. No documentation of the value of the boats was presented. When problems in the management of the property occurred, Royal offered to buy out Acker-son's interest. The offer reflected a corporate debt to Ackerson of $26,552 for capital contributions and $89,552 for his equity interest.

Runaway and Royal dispute the amount and validity of Ackerson's claim. The value of his claim is one of the issues in the state court proceeding. Runaway and Royal claim that no salary was to be paid to Ackerson. On their part, Runaway and Royal introduced a corporate resolution from January 24, 1991 which stated:

> RESOLVED FURTHER, revenue from the operation of the Corporation shall be disbursed in the following priorities: (1) repayment of financial institution principal and interest; (2) payment of trade accounts; (3) payment to Wayne Royal and Arthur Ackerson of a to be determined, monthly minimum amount to pay personal expenses, obligations and living expenses; (4) establishing a to be determined reasonable reserve for operation of the Corporation; (5) payment of interest on Wayne Royal's Promissory Note of $220,000.00 with the Corporation unless deferred/paid with appreciation of the Corporation, said deferral to be requested in writing by Wayne Royal; (6) fifty percent (50%) of the remaining balances after payment of the above items shall be paid to Wayne Royal as a principal reduction payment on said Promissory Note; and (7) the balance shall be divided and distributed 50/50 to Wayne Royal and Arthur Ackerson.

Runaway and Royal argued that this resolution demonstrates that unless the corporation was profitable, neither Ackerson nor Royal had a claim to payments. Since Runaway has operated at a net loss, Runaway and Royal argued that claims for salary are contingent. Royal also testified that the buy out offer was contingent on Ackerson documenting his contributions to the corporation, which Ackerson has never done.

## II. Discussion

### A. Involuntary petition

■ Section 303 of the Bankruptcy Code governs involuntary petitions. *See* 11 U.S.C. § 303. That section provides, in part:

An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

> (1) by three or more entities each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>
> (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under [the Code], by one or more of such holders that hold in the aggregate at least $5,000 of such claims;
>
> . . . .

11 U.S.C. § 303(b). The Code requires three petitioning creditors when the total number of creditors exceeds 12, but it only requires one petitioning creditor when that number is 12 or less, excluding employees, insiders, and holders of avoidable transfers. *Id.*

There were four issues slated for trial. The first issue was whether there are less than 12 creditors. This is perhaps the only issue not hotly debated by the parties. There are nine alleged creditors. Three of these creditors (Ackerson, Royal and Liars' Lair) are insiders. *See* 11 U.S.C. § 101(31). That leaves only six creditors. Since there are only six creditors, Code § 303(b)(2) applies and requires only one qualified creditor to bring the petition. Ackerson is the sole petitioning creditor.

The second issue slated for trial was whether Ackerson was a creditor entitled to bring the petition. Runaway and Royal have argued that Ackerson was not entitled to file a petition because he was an insider. Moreover, they argued that Ackerson's claim was subject to a bona fide dispute and was contingent as to liability.

Turning to Runaway and Royal's first argument, the Court looks first to the statute

to determine whether a creditor's status as an insider deprives that creditor of standing to file an involuntary petition. *See United States v. Ron Pair Enter. Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (analysis "begins where all such inquiries must begin: with the language of the statute itself."). In analyzing the statute, the Court examines its plain meaning. *See Id.* Section 303(b)(2) permits a petition to be filed by "one or more of such holders". The phrase "such holders" is used twice in § 303(b)(2). The first use of "such holders" refers back to § 303(b)(1) where a holder is "a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute". However, the first use of "such holders" is immediately followed by language excluding employees, insiders and creditors holding avoidable transfers. These exclusions modify the phrase "such holders" as it is used in subsection (b)(2). The second use of "such holders" refers to the first use of the phrase in subsection (b)(2) and its exclusions. The second use of the phrase "such holders" directly modifies the "one or more" creditor language. Thus, to file a petition under (b)(2), a creditor must hold a claim that is not contingent, subject to a bona fide dispute, nor be the claim of an employee, insider or transferee of an avoidable transfer.

The Court has found only one other case that considered the "such holders" language. *See In re Little Bldgs., Inc.*, 49 B.R. 889 (Bankr.N.D.Ohio 1985). The *Little Bldgs.* court found that the term "such holders" referred only to subsection (b)(1). *Id.* at 890. The court concluded that the exclusions in subsection (b)(2) were for counting purposes only, and they did not affect a creditor's standing to file a petition. *Id.*

The Court disagrees with the *Little Bldgs.* opinion for two reasons. First, the *Little Bldgs.* court looked only at the first use of the term "such holders" in subsection (b)(2). It did not analyze the second mention of the same term which appears after the exclusions. Second, the Eighth Circuit case law under the Bankruptcy Act of 1898 (the Act) [1]

---

1. 30 Stat. 544–56 (as amended through 1973)

(superseded by the Bankruptcy Reform Act of

held that creditor counting exclusions also affected the creditor's standing to file or join an involuntary petition. *See Stevens v. Nave–McCord Mercantile Co.*, 150 F. 71 (8th Cir.1906). The *Stevens* holding has been adopted by a number of bankruptcy courts considering the issue under the Code. *See, e.g., In re Kenval Marketing Corp.*, 38 B.R. 241, 243 (Bankr.E.D.Penn.1984); *In re Kreidler Import Corp.*, 4 B.R. 256, 259 (Bankr. D.Md.1980).

A brief discussion of involuntary petitions under the Act would help to understand the import of *Stevens*. Act § 59 and 60 governed involuntary proceedings. Section 59 divided standing requirements from creditor counting requirements. *See* Act §§ 59(b) and 59(e). Section 59(b) provided:

> Three or more creditors who have provable claims not contingent as to liability against a person, amounting in the aggregate to $500 in excess of the value of any securities held by them, or, if all of the creditors of the person are less than twelve in number, then one or more of the creditors whose claim or claims equal that amount, may file a petition to have him adjudged bankrupt; but the claim or claims, if unliquidated, shall not be counted in computing the number and aggregate amount of the claims of the creditors joining in the petition, if the court determines that the claim or claims cannot be readily determined or estimated to be sufficient, together with the claims of the other creditors, to aggregate $500, without unduly delaying the decision upon the adjudication.

Subsection 59(e) stated:

> In computing the number of creditors of a bankrupt for the purpose of determining how many creditors must join in the petition, there shall not be counted (1) such creditors as were employed by the bankrupt at the time of the filing of the petition; (2) creditors who are relatives of the bankrupt or, if the bankrupt is a corporation, creditors who are stockholders or members, officers or members of the board of directors or trustees or of other similar controlling bodies of such bankrupt corpo-

ration; (3) creditors who have participated, directly or indirectly, in the act of bankruptcy charged in the petition; (4) secured creditors whose claims are fully secured; and (5) creditors who have received preferences, liens or transfers void or voidable under this title.

Compare these provisions with § 303(b) of the Code which placed the three petitioning creditors and one petitioning creditor requirements into different subsections. The Code also separated the "contingent and disputed" standing provision from the one petitioning creditor requirement. *Compare* 11 U.S.C. §§ 303(b)(1)–(2) with Act § 59(b).

On a purely mechanical level, the Act's standing and claim counting exceptions were separate and distinct such that a holder of a claim that was excluded for claim counting purposes could have standing to file or join a petition. *See* Act §§ 59(b), 59(e). However, the Eighth Circuit read the provisions together finding that a person excluded for counting purposes also lacked standing to file or join a petition. This was true for cases in which there were 12 or more creditors and for those in which there were less than 12 creditors. *See Stevens*, 150 F. 71. In *Stevens*, the Eighth Circuit held that a creditor who had received an avoidable preference had no standing to join a petition, unless that creditor surrendered the preferential payment to the estate. *Id.* at 76. *See also* James Moore, ed., 3 Colliers on Bankruptcy ¶ 59.06[1.2] and cases cited therein at n. 16–19 (14th ed. 1978).

Courts under the Code have adopted this pre-Code rule. *See, e.g., In re Kenval Marketing Corp.*, 38 B.R. at 243; *In re Kreidler Import Corp.*, 4 B.R. at 259. The *Kreidler Import* court stated:

> The Court finds that neither the new Code nor its legislative history requires a departure from the case law existing under the Act with respect to the disqualification of creditors in receipt of voidable preferences.

4 B.R. at 258–59. The *Kenval* court disagreed with the *Kreidler Import* court, finding a distinction between the Act and the Code.

1978 (the Code), as amended, 11 U.C.S. § 101 et seq. (1993)).

38 B.R. at 243. The *Kenval* court explained that while the Act's counting exclusions under § 59(e) applied as standing exclusions equally to cases with more and those with less than 12 creditors, the Code placed the rule regarding more than 12 creditors in a separate subsection, § 303(b)(1), from the rule for less than 12 creditors. *Id.* at 244. As a result, the court stated:

> Only the latter subsection contains the bar and, consequently, only creditors attempting to file under that provision (§ 303(b)(2)), are precluded from successfully filing if they hold voidable preferences.

*Id.* Thus, the *Kenval* court concluded that the counting exceptions as standing exceptions applied only to cases with less than 12 creditors. *See id.* This reading is consistent with this Court's reading of § 303(b)(2). When there are less than 12 creditors, employees, insiders and creditors receiving avoidable preferences cannot file an involuntary petition.

Ackerson is a 50% shareholder and a director of the Debtor. He is an insider. *See* 11 U.S.C. § 101(31). There are less than 12 creditors when the counting exclusions are applied. Therefore, Ackerson, as an insider, has no standing to file the petition. The exclusion of insiders from filing a petition makes sense from a policy perspective when, as here, the bankruptcy is the result of an internal struggle for corporate control. There being no other qualified creditor joining the petition, the involuntary petition must be dismissed.

The Court need not reach the issue of whether Ackerson's claim is the subject of a bona fide dispute or contingent as to liability. Nor need the Court resolve the other two issues presented at trial; i.e., whether Ackerson's claim is for more than $5000 and whether the debtor is generally not paying its debts.

### B. Abstention

■ Runaway and Royal also requested that this Court abstain from hearing this case under § 305. If the Court were to reach this issue, the Court would abstain. A bankruptcy court has limited discretion to require that a matter be litigated in state court even where jurisdiction exists in the bankruptcy court. *In re Titan Energy, Inc.;* 837 F.2d 325, 330 (8th Cir.1988). According to *Titan,* abstention is appropriate where the action is one purely of state law, and absent the bankruptcy, could not be commenced in federal court. *Id.* at 333. This matter is a two party dispute between Ackerson and Royal about the direction and control of Runaway. A lawsuit is pending in Camden County that trial was set for November 30, 1993. The claims in that case are substantially similar to those presented here and would resolve said dispute. Therefore, the state court is a more appropriate forum for this dispute.

■ Recently, this Court stated that the only test compelled by § 305 is that abstention must be in the best interest of the debtor and the creditors. *In re Manchester Heights Assocs.,* 140 B.R. 521, 523 (Bankr. W.D.Mo.1992). Since Runaway, the alleged debtor, requests the abstention, the Court assumes that abstention is in the debtor's best interest. *See id.* The petition indicates that the corporation's assets exceed its liabilities. Absent the bankruptcy, the estate would be in the hands of the Receiver who is charged with its preservation for the benefit of the creditors. The Receiver would safeguard the creditors during the pendency of the state court action. Thus, the creditors would not be harmed by the resolution of this dispute in Camden County Circuit Court, and the Court believes such a resolution in that forum would be in their best interest. Therefore, abstention would be appropriate.

### III. Conclusion

Based on the foregoing discussion, Runaway and Royal's motion to dismiss is hereby GRANTED, and the involuntary bankruptcy petition filed by Ackerson is DISMISSED. An award of costs, fees, and punitive damages under 11 U.S.C. § 303(i) is inappropriate on the facts. Consequently, Runaway and Royal's requests for such award is hereby DENIED.

This Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.

SO ORDERED.