802 F.2d 990
 NATIONAL CITY BANK, as Indenture Trustee for Holders of
Gambles Credit Corporation, ten percent (10%) Subordinated
Notes due June 1, 1998; and nine and one half percent (9
1/2%) Subordinated Notes Series A due December 1, 1989 and
Series B due December 1, 1997, Appellee,
v.
COOPERS AND LYBRAND, Appellant.
 No. 85-5411.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 13, 1986.
Decided Sept. 23, 1986.
 
 Peter M. Kreindler, Washington, D.C., for appellant.
 James C. Diracles, Minneapolis, Minn., for appellee.
 Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge and BOWMAN, Circuit Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 Coopers and Lybrand (C & L), a nationwide partnership of certified public accountants, appeals from a final order entered in the District Court[1] for the District of Minnesota remanding to the Minnesota state court a professional malpractice action brought against C & L by National City Bank (NCB). NCB initially filed the case in the state court, and C & L then removed the case to the federal court. C & L argues that the removal to the federal court was proper because federal jurisdiction based on federal question and bankruptcy jurisdiction existed. For the reasons discussed below, we affirm.
 
 
 2
 NCB, a Minnesota corporation, is the indenture trustee for various notes issued by Gamble's Credit Corp. (GCC). GCC, a Nevada corporation, was a subsidiary of Gamble-Skogmo, Inc. (GSK). GCC's only corporate activity was to finance GSK's accounts receivable, and GCC's only significant assets were GSK's accounts receivable. GCC's auditing and accounting were performed by C & L.
 
 
 3
 In August 1980 the Wickes Corp. (Wickes), a Delaware corporation with its headquarters in San Diego, California, acquired GSK and its subsidiaries, including GCC. In 1981 and 1982 C & L's San Diego office audited the financial statements of Wickes and its subsidiaries, including GCC. In April 1982, Wickes and most of its subsidiaries, including GSK and GCC, filed bankruptcy petitions under Chapter 11 of the Bankruptcy Reform Act. The bankruptcy proceedings took place in the Central District of California.
 
 
 4
 One issue in the bankruptcy proceedings was whether GCC had perfected its security interests in GSK's accounts receivable. This was a critical issue because GSK, as debtor in possession, could avoid GCC's security interests which were not properly perfected prior to GSK's filing for bankruptcy. 11 U.S.C. Secs. 544(a), 1107(a). Another related issue was whether GSK's obligations to GCC should be subordinated to GSK's other obligations because GCC was an "alter ego" of GSK.
 
 
 5
 In order to resolve these issues and to establish that GCC had perfected security interests in GSK's accounts receivable, the GCC Creditors Committee commenced an adversarial proceeding in the bankruptcy court in the Central District of California. The parties eventually reached a settlement, which was incorporated into the GCC plan of reorganization. Pursuant to the settlement, the noteholders received, in full satisfaction of their claims, an unsecured "senior claim over" against GSK in the amount of approximately $66,760,000. In exchange the noteholders released their claims against Wickes, GSK and their subsidiaries, including GCC, and their respective officers and directors. The noteholders expressly reserved their rights against "outside professionals" retained by GCC prior to 1982. C & L was one of these outside professionals.
 
 
 6
 The GCC reorganization plan was confirmed by the bankruptcy court and became effective in November 1983. In 1984 Wickes proposed a plan of reorganization for Wickes and its subsidiaries, including GSK. The bankruptcy court confirmed the Wickes reorganization plan in September 1984. Pursuant to the reorganization plan, the indenture noteholders received about 95 percent of their "senior claim over."
 
 
 7
 In April 1985 NCB filed this action in state court to recover from C & L the remainder of the principal and accrued interest from the date of the bankruptcy filing by GCC to the date of distribution under the Wickes reorganization plan. NCB sued C & L under state law alleging negligence, fraud and breach of contract (NCB asserts that it was a third party beneficiary of the auditing contract between GCC and C & L). NCB alleges that C & L's audits of GCC should have disclosed that GCC's 1981 financial statements had incorrectly characterized GCC's primary assets as accounts receivable purchased from GSK rather than as loans to GSK and should have detected that there were "serious documentation and perfection" problems with the accounts receivable. NCB alleges that it could have taken action to correct the defects, particularly the perfection defects, if C & L had discovered and disclosed those problems.
 
 
 8
 C & L removed the action from state court to federal court in May 1985. C & L alleged the existence of federal question jurisdiction based on 28 U.S.C. Sec. 1331 and 28 U.S.C. Sec. 1334(b). NCB then filed a motion to remand the action to the state court and C & L filed a motion to transfer the action to the bankruptcy court for the Central District of California which had retained jurisdiction over the Wickes bankruptcy proceeding. The district court remanded the action to the state court and did not consider C & L's motion for a transfer. National City Bank v. Coopers & Lybrand, No. 4-85-715, slip op. at 2 (D.Minn. Nov. 1, 1985) (National City Bank).
 
 
 9
 The sole issue on appeal is whether the district court erred in remanding the action to state court.[2] The district court held that federal questions appeared only in C & L's answer, not in the complaint, and therefore were not cognizable for purposes of determining federal jurisdiction under the "well pleaded complaint" rule. National City Bank, slip op. at 5-7. The district court further held that resolution of NCB's state law claims did not involve substantial questions of federal law because the perfection of security interests is a question of state law and the issues of causation and damages would not require resolution of "new bankruptcy law issues." Id. at 9-10. The district court further held that bankruptcy jurisdiction did not exist under 28 U.S.C. Sec. 1334(b) because (1) the action did not "arise under" or "arise in" Title 11 because a bankruptcy debtor is not a party to the action and no relief under Title 11 is sought, and (2) the action is not "related to" a bankruptcy proceeding because the action cannot affect the bankruptcy estate. Id. at 12-13. The district court concluded that "the present action, .., is at most a precursor to [C & L's] potential indemnification action against Wickes." Id. at 13.
 
 
 10
 C & L argues that this action arises under 28 U.S.C. Sec. 1331 and 28 U.S.C. Sec. 1334(b) because the NCB's claims turn in part on a construction of federal bankruptcy law. C & L asserts that NCB's ability to prove liability, causation and damages depends on an interpretation of federal bankruptcy law, e.g., whether GCC's security interests in GSK's accounts receivable are avoidable under federal bankruptcy law.
 
 
 11
 NCB initially argues that the issue of federal jurisdiction under Sec. 1331 as a basis for removal jurisdiction is not properly before this court. NCB asserts that C & L is attempting to accomplish indirectly what it is prohibited from doing by 28 U.S.C. Sec. 1447. We agree. Section 1447(d) states that "[a]n order remanding a case to the State Court from which it was removed is not reviewable on appeal or otherwise." "[I]n order to prevent delay in the trial of remanded cases by protracted litigation of jurisdictional issues ..., Congress immunized from all forms of appellate review any remand order issued on the grounds specified in Sec. 1447(c), whether or not that order might be deemed erroneous by an appellate court." Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 351-52, 96 S.Ct. 584, 593, 46 L.Ed.2d 542 (1976); see Gravitt v. Southwestern Bell Telephone Co., 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977) (per curiam) (district court's remand order plainly within the bounds of Sec. 1447(c) was unreviewable by the courts of appeals by mandamus or otherwise). We therefore cannot review the district court's remand order to the extent that it is based on a lack of federal question jurisdiction under Sec. 1331.
 
 
 12
 We next consider C & L's assertion that the present case "arises under" federal bankruptcy jurisdiction pursuant to 28 U.S.C. Sec. 1334(b) and therefore removal was proper. Section 1334(b), which grants the district court original jurisdiction of cases arising under the Bankruptcy Reform Act, was copied verbatim from Sec. 1471(b) of the 1978 Act. The legislative history of Sec. 1471(b) concerning "arising under" is therefore instructive.The phrase "arising under" has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under Title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of Title 11. For example, a claim of exemptions under 11 U.S.C. Sec. 522 would be cognizable by the bankruptcy courts, as would a claim of discrimination in violation of 11 U.S.C. Sec. 525. Any action by the trustee under an avoiding power would be a proceeding arising under title 11, because the trustee would be claiming based on a right given by one of the sections in subchapter III of chapter 5 of Title 11. Many of these claims would also be claims arising under or related to a case under Title 11.
 
 
 13
 H.R.Rep. No. 595, 95th Cong., 2d Sess. 445-46 (emphasis added), reprinted in 1978 U.S. Code Cong. & Ad. News 5787, 6401; see Carlton v. Baww, Inc., 751 F.2d 781, 787 n. 7 (5th Cir.1985). We therefore conclude that the district court correctly determined that this action did not "arise under" Title 11 because none of NCB's claims is based on a provision of Title 11.
 
 
 14
 C & L next argues that the present action "arises in" and is "related to" Title 11. C & L argues that NCB's claim would not have arisen but for Wickes, GSK's and GCC's petitions for reorganization raising the question of avoidability, which is at the core of NCB's claims. Further, C & L asserts that the present action is "related to" the bankruptcy action because the underlying dispute involves a review and clarification of the bankruptcy proceedings.
 
 
 15
 We hold that the district court properly concluded that the present action was not one "arising in" or "related to" the bankruptcy proceedings. The district court relied in part on the decision of the Third Circuit in Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir.1984) (Pacor ). National City Bank, slip op. at 12-13. In Pacor, the court stated that
 
 
 16
 the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.... An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action ... and which in any way impacts upon the handling and administration of the bankrupt estate.
 
 
 17
 743 F.2d at 994. We agree with the reasoning of the Pacor court and with the conclusion of the district court that the present action cannot affect the bankruptcy estate of Wickes or its subsidiaries.
 
 
 18
 Accordingly, we affirm the order of the district court remanding the present action to the state court because of a lack of bankruptcy jurisdiction.
 
 
 
 [1]
 The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota
 
 
 [2]
 An issue not raised by the parties is the finality of the district court's remand order. Under both 28 U.S.C. Sec. 1291 (general final appeals from district courts) and 28 U.S.C. Sec. 1293 (bankruptcy appeals) an order must be final in order for it to be reviewable in this court. An order, although not a final judgment on the merits on all claims and to all parties, may be reviewed as a final collateral order if it meets the test set out in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Three requirements must be met: (1) the order must conclusively determine the disputed question, (2) the order must resolve an important question completely separate from the merits of the action, and (3) the order must be effectively unreviewable on appeal from final judgment. See Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457-58, 57 L.Ed.2d 351 (1978); Pacor, Inc. v. Higgins, 743 F.2d 984, 988 (3d Cir.1984). We find that the remand order at issue satisfies these conditions. First, the remand order conclusively determines the disputed question whether the bank's claim "arises under" or "arises in" or "relates to" the bankruptcy proceedings for purposes of 28 U.S.C. Sec. 1334(b). Second, the district court's determination that there was no Sec. 1334(b) jurisdiction is easily separable from the remainder of the litigation; and third, the remand order would be effectively unreviewable if C & L were forced to wait until a final judgment was entered in order to appeal. Id