# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

No. 00-6113 MN

---

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Martin J. McAlpin | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Educational Credit Management | * | Appeal from the United States |
| Corporation. | * | Bankruptcy Court for the |
| | * | District of Minnesota |
| Appellant, | * | |
| v. | * | |
| | * | |
| Martin J. McAlpin, | * | |
| | * | |
| Appellee. | * | |

---

Submitted: May 2, 2001
Filed: June 21, 2001

---

Before WILLIAM A. HILL, SCHERMER and FEDERMAN,[1] Bankruptcy Judges

SCHERMER, Bankruptcy Judge

---

[1] Arthur Federman, United States Bankruptcy Judge for the Western District of Missouri, sitting by designation.

Educational Credit Management Corporation ("ECMC") appeals the bankruptcy court's order enjoining ECMC from receiving collection costs from the debtor, Martin J. McAlpin, ("Mr. McAlpin") that were disallowed in an earlier claim objection proceeding. We have jurisdiction over this appeal from the final orders of the bankruptcy court. See 28 U.S.C. § 158 (b). For the reasons set forth below, we reverse.

ISSUE

The issue on appeal is whether the bankruptcy court's entry of an order enjoining ECMC from collecting collection costs from Mr. McAlpin that were disallowed in an earlier bankruptcy court proceeding was legally correct. We conclude that the bankruptcy court should not have entered the injunction because its order was premised on an earlier bankruptcy court order and the earlier order could not conceivably have affected the bankruptcy estate.

BACKGROUND

Mr. McAlpin filed his Chapter 13 Petition on November 17, 1993. At that time, he owed student loans which were eventually transferred to ECMC. ECMC filed its proof of claim after the claims bar date in the amount of $19,977.43 which included principal of $13,340.65, interest of $1,612.80 and collection cost of $5,023.98. Mr. McAlpin did not object to ECMC's late-filed proof of claim. Likewise, Mr. McAlpin's plan did not provide for payment of ECMC's claim. Mr. McAlpin completed his five year Chapter 13 plan payments and was granted a discharge by the Bankruptcy Court on January 27, 1999.

Shortly after Mr. McAlpin's discharge was entered he filed an objection to ECMC's proof of claim alleging that the collection costs were not "the actual costs incurred by claimant to secure payment or information from Debtor, prior to his Chapter 13 filing, nor the average costs incurred for similar attempts to secure payments or information from other borrowers" (the "Objection to Claim Proceeding"). The Objection to Claim Proceeding was limited to only the collection cost component and did not dispute the principal and interest due. ECMC premised its collection cost entitlement on 34 C.F.R. § 674.45 (e) which permits collection costs on student loans provided they are reasonable and either the actual cost incurred or the average cost incurred for similar actions taken to collect loans in similar stages of delinquency. On March 2, 1999, the Bankruptcy Court held a hearing on Mr. McAlpin's objection to ECMC's claim. ECMC, although provided notice of the hearing, did not attend the hearing. Mr. McAlpin argued to the

Court that his objection should be sustained because ECMC "failed to provide any documentation for its alleged collection costs." ECMC chose not to attend the hearing because: 1) Mr. McAlpin had fully performed his obligations under the Chapter 13 plan; 2) the plan did not provide for treatment of the ECMC claim; and 3) a discharge Order had been entered. On March 4, 1999, the Bankruptcy Court issued its Order allowing ECMC's claim for principal and pre-petition interest in the amount of $14,953.45 ($13,340.65 principal and $1,612.80 interest).

The bankruptcy case was closed on July 21, 1999. Thereafter, the parties corresponded with respect to repayment of Mr. McAlpin's student loan, which resulted in ECMC taking the position that disallowing the collection cost component of its claim did not result in a discharge of such costs. On November 24, 1999, Mr. McAlpin reopened his bankruptcy case and filed an adversary proceeding seeking injunctive relief barring ECMC from collecting the disallowed collection costs (the "Adversary Proceeding"). The Bankruptcy Court conducted a trial on August 7, 2000, and thereafter issued its Order holding that Mr. McAlpin's complaint was a core proceeding which authorized the court to enter a final Order and that its Order of March 4, 1999, "conclusively determined the amount of the student loan obligation." Accordingly, the Court issued its Order enjoining ECMC from taking any action to collect the $5,023.98 portion of ECMC's claim. ECMC appeals this Order.

## STANDARD OF REVIEW

This Court reviews de novo the bankruptcy court's legal conclusions, and reviews for clear error its findings of fact. Fed. R. Bankr. P. 8013. Schroeder v. Rouse (In re Redding), 247 B.R. 474, 477 (B.A.P. 8th Cir. 2000); Martin v. Cox (In re Martin), 140 F.3d 806, 807 (8th Cir. 1998); Gourley v. Usery (In re Usery), 123 F.3d 1089, 1093 (8th Cir. 1997). Before determining the merits of an appeal, an appellate court must first determine whether the bankruptcy court had subject matter jurisdiction. See Specialty Mills, Inc. v. Citizens State Bank, 51 F.3d 770, 773 (5th Cir. 1995). A determination of whether the bankruptcy court had jurisdiction to hear a case is a legal question to be reviewed de novo.

## DISCUSSION

### Celotex Standard

The United States Supreme Court held in CelotexCorp. V. Edwards, 514 U.S. 300, 115 S.Ct. 1493 (1995), that it is for the court of first instance to determine the validity of the law. The court's orders should be respected until its decisions are reversed. Id. at 313. The parties should challenge the bankruptcy court's conclusions in that court if they are dissatisfied with the conclusions. Id. If the parties are still not content with the ultimate conclusion of the court of first instance, they can appeal to a higher court. Id. By collaterally attacking the final determination of a court, a party seriously undermines the "orderly process of the law." Id.

We do not address whether the bankruptcy court ruled properly on the merits in the Objection to Claim Proceeding. See Celotex, 514 U.S. 300 at 313. It is appropriate only for this Court to determine whether the bankruptcy court had jurisdiction to enter the order in the Objection to Claim Proceeding.

### Jurisdiction of the March 4, 1999, Order

The order in the Objection to Claim Proceeding served as the underpinning for the court's holding in the Adversary Proceeding. If the bankruptcy court did not have jurisdiction for its entry of the order in the Objection to Claim Proceeding, then there was no basis upon which the bankruptcy court could enjoin ECMC from procuring the collection costs in the Adversary Proceeding.

Although district courts have both original and exclusive jurisdiction over all Bankruptcy Code cases, they have original, but not exclusive jurisdiction over civil proceedings "arising under title 11 or arising in or related to cases under title 11." 11 U.S.C. § 1334; 1 Collier on Bankruptcy ¶ 3.01[1][c], n.23a (15th ed.). District courts may cause all cases and proceedings to be referred to the bankruptcy judges for their respective districts. 28 U.S.C. § 157(a).

For a bankruptcy court to have federal subject matter jurisdiction, a proceeding must meet the minimum requirement of "relating to" a case under 28 U.S.C. § 1334. A bankruptcy court's related to jurisdiction is extremely broad. See In re NWFX, Inc., 881 F.2d 530, 533 (8th Cir. 1989). The court in Pacor Inc. v. Higgins, 743 F.2d 984 (3rd Cir. 1984), devised a test for determining "related to"

-4-

jurisdiction. The court stated that for a bankruptcy court to assert "related to" jurisdiction in a proceeding, the outcome of the proceeding must be able to alter the debtor's rights liabilities, options, or freedom of action and conceivably have an effect on the handling of the estate being administered in bankruptcy. Id. at 994. The bankruptcy court's "related to" jurisdiction is not without limits. Id. The United States Supreme Court and the United States Court of Appeals for the Eighth Circuit cited the court's analysis in Pacor with approval. See Celotex, 514 U.S. at 308 and n. 6; Dogpatch Properties, Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A., Inc.), 810 F.2d 782, 786 (8th Cir. 1987).

The McAlpin bankruptcy court did not have jurisdiction pursuant to 28 U.S.C. § 1334 to enter the order determining the amount of the allowed claim. As noted, the case was filed on November 17, 1993. Absent a contrary order, the first payment came due on or before December 17, 1993. 11 U.S.C. § 1326(a)(1). The plan could not provide for payments over a period longer than five years and could not be modified to extend that period. 11 U.S.C. §§ 1322(d) and 1329(c). The objection to claim was filed after the five-year period had elapsed, and after completion of a plan paying nothing to ECMC. Therefore, although the outcome of the Objection to Claim Proceeding may have affected Mr. McAlpin's liabilities regarding the collection costs, it did not impact upon the handling or administration of his bankruptcy case. Mr. McAlpin had already been granted a discharge. His bankruptcy estate no longer existed. 11 U.S.C. §§ 1327 (e) and 1328 (a)(2); see also Specialty Mills, 51 F.3d at 774 (recognizing that some convergence between a third-party dispute and the debtor's affairs was not sufficient to prove that the court should exercise "related to" jurisdiction when the third-party dispute affected neither the distribution of estate assets nor the bankruptcy estate in general); In re Fietz, 852 F.2d 455 (9th Cir. 1988) (adopting the Pacor test and finding that even though the debtor's former wife's cross-claim may have involved community property, the court could not exercise "related" jurisdiction because the chapter 13 plan had been confirmed and the cross-claim would not necessarily affect the bankruptcy case); Compare Dogpatch, 810 F.2d at 786 (8th Cir. 1987) (finding that a counterclaim and a third-party complaint filed by a mortgagee against the purchaser of a debtor's mortgaged property were "related to" the bankruptcy case because the outcome of a proceeding to foreclose would have an effect on the estate. If the purchaser should become unable to pay the mortgagees, the debtor's estate would be responsible for payment).

CONCLUSION

Since the March 4, 1999, order could not conceivably have affected the estate, or met the <u>Pacor</u> test, this Court believes that the underpinnings of the order for injunctive relief cannot stand.  For the foregoing reasons, the judgment of the bankruptcy court is reversed.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE
EIGHTH CIRCUIT