# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

Nos. 03-6014 and 03-6015WM

---

| | | |
|---|---|---|
| In re: Farmland Industries, Inc. | * | |
| | * | |
| Debtor | * | |
| ----------------------------- | | |
| Safeco Insurance Company of America, | * | |
| | * | |
| Plaintiff-Appellant | * | |
| | * | |
| vs | * | |
| | * | |
| Farmland Industries, Inc., | * | |
| | * | |
| Defendant | * | |
| | * | |
| ADM/Farmland, Inc., | * | |
| | * | |
| Defendant-Appellee | * | Appeals from the United States |
| -------------------------------- | * | Bankruptcy Court for the |
| Safeco Insurance Company of America, | * | Western District of Missouri |
| | * | |
| Plaintiff - Appellant | * | |
| | * | |
| vs. | * | |
| | * | |
| Farmland Industries, Inc.; | * | |
| Farmland Transportation, Inc.; | * | |
| | * | |
| Defendants | * | |
| | * | |
| Anthony M. Brida, Inc.; B&D Motors, | * | |
| Inc.; Cornhusker Motor Lines; Direct | * | |

Transport, Inc.; Michael Bennett        *
Trucking, Inc.; R.E. Garrison Trucking, *
Inc.; Sparhawk Trucking, Inc.; Steiner  *
& Son, L.L.C.; Agricultural Express;    *
All Transportation Services, Inc.;      *
Pinhook Transportation; Transcarriers,  *
L.L.C.; Dannie Glider, Inc.; Heavy      *
Duty Trux, Ltd.; E.C. Transportation    *
                                        *
      Defendants - Appellees.           *

_____

Submitted:  July 14, 2003
Filed: August 15, 2003

_____


Before KRESSEL, Chief Judge, SCHERMER, and DREHER, Bankruptcy Judges.

_____

DREHER, Bankruptcy Judge.


The issue in these appeals is the scope of bankruptcy court jurisdiction.  In each case the bankruptcy court dismissed in part Appellant's claims on the ground that the court lacked jurisdiction to decide the dispute.  For the reasons stated below, we reverse.

FACTS AND PROCEDURAL HISTORY

A.    THE SAFECO/ADM DISPUTE

On May 4, 2001, ADM/Farmland, Inc. ("ADM") purchased certain grain handling facilities from Debtor, Farmland Industries, Inc. ("Debtor").  The Purchase Agreement required Debtor to provide ADM with a bond indemnifying ADM against

future environmental claims.  Debtor purchased the bond ("the ADM bond") from Appellant, Safeco Insurance Company of America ("Safeco").  The ADM bond, in the principal amount of five million dollars, was executed by Debtor and Safeco, as principal and surety respectively.  It named ADM as obligee.  The ADM bond had an effective date of May 4, 2001, and was renewable for four additional one-year periods unless Safeco gave ninety days notice of its intent to cancel or not to renew.  The ADM bond further provided:

> It is understood and agreed that [ADM] may recover the full amount of the Bond (less any previous amounts paid to [ADM] under the Bond) if [Safeco] cancels or nonrenews the Bond and, within twenty (20) days prior to the effective date of cancellation or nonrenewal, [ADM] has not received security acceptable to it to replace the Bond.

Safeco issued the ADM bond on the strength of two General Agreements of Indemnity ("the indemnity agreements") that Debtor had executed and delivered to ADM in 1988 and 1993.  Pursuant to these indemnity agreements Debtor agreed to indemnify Safeco should Safeco be required to make payment under any bond Safeco would write for Debtor.

On April 22, 2002, Safeco sent a Notice of Bond Cancellation to ADM, canceling the ADM bond effective July 26, 2002.  Debtor filed for protection under Chapter 11 of the Bankruptcy Code on May 31, 2002.  On July 11, 2002, ADM (through Archer Daniels Midland Company) exercised its right to immediate payment of the five million dollar penal sum on the bond.  On July 25, 2002, Debtor and Safeco entered into a Term Sheet setting forth the terms and conditions pursuant to which Safeco would continue as surety on the ADM bond. Because Debtor was now in bankruptcy, the agreement reflected in the Term Sheet was a post-petition security credit  agreement that required bankruptcy court approval.

3

In late July and early August, ADM and Safeco engaged in a series of communications. The parties disagree on the effect of these exchanges. Safeco believes that ADM agreed to an extension of the July 26, 2002 cancellation date pending bankruptcy court approval; ADM asserts that it did no such thing. Although the new arrangements were later approved by the bankruptcy court, the ADM bond is in full force and effect, and there have never been any claims against it, ADM continues to insist on immediate payment of the five million dollar penal amount of the bond from Safeco.

On August 12, 2002, rather than pay five million dollars to ADM, Safeco commenced an adversary proceeding in the bankruptcy court naming both ADM and Debtor as Defendants. Safeco's original complaint sought a declaratory judgment determining that ADM was not entitled to forfeiture of the penal sum of five million dollars and an injunction preventing ADM from continuing to demand payment. The complaint alleged that Debtor's successful reorganization was at risk if relief was denied because Safeco would be entitled to indemnity from Debtor and, as a result, Safeco would file an administrative expense claim for the amount it was compelled to pay ADM.

Debtor filed an answer generally denying the allegations of the complaint, but ADM chose a different tack. It moved to dismiss the complaint alleging that the bankruptcy court had no jurisdiction over what was essentially, in ADM's view, a dispute between two nonparties to the bankruptcy case. In response, Safeco filed an Amended Complaint for Declaratory Judgment, Injunctive Relief under Section 105 of the United States Bankruptcy Code, Adequate Assurance and Adequate Protection, and for Exoneration, or, in the alternative, *Quia Timet*.[1] The Amended Complaint

---

[1] *Quia timet* is the right of a surety to demand that the principal place the surety "in funds" when there are reasonable grounds to believe that the surety will suffer a loss in the future because the principal is likely to default

asserted two additional claims for relief directly against Debtor. In Count II, Safeco asserted a right to the equitable remedies of exoneration or, in the alternative, *quia timet* against Debtor, as principal on the bond. Safeco asserted that, in light of ADM's claims, Debtor must provide Safeco with funds or property sufficient to satisfy the demand of ADM. In Count III, Safeco asserted that the ADM bond is an executory contract between Debtor and Safeco and not merely a financial accommodation; that Debtor's refusal to tender the amount necessary to meet ADM's demand was, in effect, a *defacto* assumption of the executory contract; and that Safeco was entitled to adequate protection. In addition to the declaratory and injunctive relief sought in the original complaint, the amended complaint sought judgment against Debtor for *quia timet* requiring Debtor to immediately provide Safeco with funds or property sufficient to satisfy the claim of ADM and further sought adequate protection under section 365 of the Bankruptcy Code.

By Order dated February 28, 2003 ("the ADM order"), the bankruptcy court granted, in part, ADM's motion to dismiss. The bankruptcy court dismissed that portion of the amended complaint that asserted claims against Safeco, but retained jurisdiction of, but held in abeyance, Safeco's causes of action against Debtor

---

> on its primary obligation to the creditor . . . .
> Exoneration, though closely related, is distinct. It is the surety's right, after the principal's debt has matured, to compel the principal to honor its obligation to the creditor . . . . *Quia timet* and exoneration contain common substantive elements. Specifically, the surety must establish that the debt is presently due (exoneration) or will come due *(quia timet)*, that the principal is or will be liable for the debt, and, that absent equitable relief, the surety will be prejudiced because it will be forced to advance the money to the creditor.

Borey v. Nat'l Union Fire Ins. Co., 934 F.2d 30, 32-3 (2nd Cir. 1991).

pending a determination in another forum of whether Safeco is liable to ADM for the penal amount of the ADM bond. The bankruptcy court viewed the dispute between Safeco and ADM to be a separate, distinct piece of litigation between two nonparties to the bankruptcy case which was neither a core nor a related to proceeding. In reaching this conclusion, the bankruptcy court relied almost exclusively on a prior bankruptcy court decision in the same district, Foley Co. v. Aetna Cas. & Surety Co. (In re S & M Constructors, Inc.), 144 B.R. 855 (Bankr. W.D. Mo. 1992) and distinguished the United States Supreme Court decision in Celotex Corp. v. Edwards, 514 U.S. 300 (1995) .

Safeco timely filed a notice of appeal from the ADM order and, while contending that the ADM order was final, made a precautionary motion for leave to appeal on an interlocutory basis. The motion for leave to appeal was denied by the bankruptcy court. That order, however, is ineffective since the decision on the motion resides exclusively with this Bankruptcy Appellate Panel. *See* FED. R. BANKR. P. 8003. Subsequently, Safeco also filed a separate lawsuit in the United States District Court for the Central District of Illinois against ADM in which it makes the same claims it made in the adversary proceeding.

B.     THE SAFECO/INTERSTATE CARRIERS DISPUTE

The second appeal relates to a bond issued by Safeco, as surety, with Debtor, as principal, ("the FHA bond") for the benefit of certain interstate carriers doing business with Debtor (collectively the "interstate carriers") to assure certain regulatory obligations owed by Debtor to the Federal Highway Administration ("FHA"). The FHA bond named the FHA as obligee and was in the penal sum of $10,000. Safeco issued the FHA bond in reliance on the indemnity agreements.

Safeco initially received and paid two claims from interstate carriers under the FHA bond in the total amount of $2,647.95. When it began to receive a number of

additional claims it concluded that at least some of the losses claimed were within the scope of the bond and would exceed the penal amount of the bond. Safeco then commenced an adversary proceeding in bankruptcy court against Debtor and the interstate carriers who had made claims. In Count I of its amended complaint Safeco offered to deposit with the court the remaining sum due on the bond, $7,352.05, and sought to obtain a declaration that upon doing so it would be relieved of further obligations under the FHA bond as well as have indemnity rights against Debtor. In Count II Safeco sought to interplead the remaining amount of the bond. As to the remaining counts, they closely resemble the complaint in the Safeco/ADM dispute. Count III sought judgment against Debtor for losses Safeco incurred in payment of the bond, including attorneys' fees and expenses. Count IV sought relief by way of *quia timet* or, alternatively, exoneration from all claims made by the interstate carriers against the bond. And, in Count V, Safeco alleged that the FHA bond was an executory contract which Safeco had effectively assumed and was required to adequately assure.

Following commencement of the action, Safeco brought a motion to be allowed to interplead the remaining amount of the bond into court. Instead of ruling on the motion, the bankruptcy court *sua sponte* addressed the issue of its jurisdiction. In an order dated March 4, 2003 ("the FHA order"), the bankruptcy court dismissed for lack of subject matter jurisdiction the causes of action asserted by Safeco against the interstate carriers and held in abeyance the claims of Safeco against Debtor, again pending determination in another forum of the rights and obligations of Safeco and the interstate carriers under the FHA bond. The court's reasoning for doing so paralleled the reasoning expressed by it in the ADM order.

Safeco timely appealed from the FHA order and again, as a precautionary measure, filed a motion for leave to appeal on an interlocutory basis. As with the ADM case, through apparent ministerial error, the bankruptcy court ruled on the

motion and denied relief without referral to the Bankruptcy Appellate Panel for decision.

DECISION

A.    STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. FED. R. BANKR. P. 8013; Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn, Inc.), 107 F.3d 558, 561-62 (8th Cir. 1997); Brink v. Payless Cashways, Inc. (In re Payless Cashways, Inc.), 281 B.R. 648, 651-52 (B.A.P. 8th Cir. 2002). Safeco raises two issues on appeal. It asserts that the bankruptcy court erred in determining that it had neither core nor related to jurisdiction of the disputes between Safeco and ADM and the interstate carriers. It further asserts that the court erred in holding in abeyance determination of the disputes between Debtor and Safeco because doing so effectively deprived Safeco of any effective opportunity to pursue those claims.

The issue of whether the bankruptcy court properly dismissed Safeco's complaints, in part, on the basis that the court lacked jurisdiction is a legal determination to be reviewed de novo. Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000); Williams v. Citifinancial Mortgage Co. (In re Williams), 256 B.R. 885, 891 (B.A.P. 8th Cir. 2001). The decision by the bankruptcy court to hold the remainder of the case in abeyance pending resolution of the dismissed counts in another forum is a matter left to the discretion of the bankruptcy court. We review the exercise of that discretion for abuse. An abuse of discretion is found if the bankruptcy court's judgment was based on clearly erroneous factual findings or erroneous legal conclusions. Blan v. Nachogdoches County Hosp. (In re Blan), 237 B.R. 737, 739 (B.A. P. 8th Cir. 1999).

8

B. BANKRUPTCY APPELLATE PANEL JURISDICTION

Before reaching these issues, however, we must address ADM's assertion that we lack jurisdiction to hear these appeals because the ADM order was not final.[2] ADM asserts that the ADM order failed to resolve all issues below thus rendering the order not final for appeal purposes.

The Eighth Circuit has adopted a three factor test to determine whether a bankruptcy court order is final for purposes of 28 U.S.C. § 158 (d), considering "the extent to which (1) the order leaves the bankruptcy court nothing to do but execute the order, (2) delay in obtaining review would prevent the aggrieved party from obtaining effective relief, and (3) a later reversal on that issue would require recommencement of the entire proceeding." First National Bank v. Allen, 118 F. 3d 1289, 1293 (8th Cir. 1997). The Eighth Circuit Bankruptcy Appellate Panel has applied this test for determining finality under 28 U.S.C. § 158(a)(1). *See, e.g.*, Coleman Enterprises, Inc v. QAI, Inc.(In re Coleman Enterprises, Inc.), 275 B.R. 533, 538 (B.A.P. 8th Cir. 2002). The orders from which Safeco appeals meet these tests with respect to the dispute between Safeco and the Appellees. Unless Safeco is permitted to appeal these decisions, Safeco is left with two orders from which it cannot now and never will be able to appeal;

> [an] order, although not a final judgment on the merits on all claims and to all parties, may be reviewed as a final collateral order if it meets the test set out in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541

---

[2] The issue was first raised by ADM in its brief in the Safeco/ADM appeal. Appellees in the Safeco/Interstate Carriers dispute did not file a brief, choosing instead to rely on ADM's efforts. We assume that the issue would have likewise been raised in the Safeco/Interstate Carriers dispute had the appellees filed a brief and, in any event, this court has an independent obligation to conduct this jurisdictional inquiry. *See* Lewis v. United States, 992 F.2d 767, 771 (8th Cir. 1993); Crockett v. Lineberger, 205 B.R. 580, 581 n.3 (B.A.P. 8th Cir. 1997).

(1940). Three requirements must be met; (1) the order must conclusively determine the disputed question, (2) the order must resolve an important question completely separate from the merits of the action, and (3) the order must be effectively unreviewable on appeal from final judgment.

National City Bank v. Coopers and Lybrand, 802 F. 2d 990, 993 n.2 (8th Cir. 1986); *see also* Moxley v. Comer (In re Comer), 716 F.2d 168, 172 (3rd Cir. 1983) (holding that an order is final when its subject matter is not one that can wait final resolution of the bankruptcy proceeding, the particular controversy will not return to the court, and effective review of the order cannot await final disposition of the case in the bankruptcy court); Bayer v. Nicola (In re Bestmann), 720 F.2d 484, 486 (8th Cir 1983)(the essence of the test to determine finality of a bankruptcy order is whether the particular controversy with which the order deals may be reviewed at a subsequent time, or whether effective review cannot await a final or later disposition of the dispute in the bankruptcy court).

Without question the orders conclusively determined whether Safeco's claims against the Appellees would be heard in bankruptcy court. These decisions resolve a question of law completely separate from the merits in each of the cases. Without an appeal at this time, Safeco's only choice is to litigate the question in another forum and it will be precluded, after a judgment is entered, from appealing from the final judgment of the bankruptcy court. The bankruptcy court completely dismissed the Appellees from Safeco's adversary proceedings and dismissed all of Safeco's claims involving them on the grounds that it lacked subject matter jurisdiction to determine the issues. There is no determination left open for disposition at a later time in the bankruptcy case and there is a final resolution of the issues as between Safeco and the Appellees.

ADM argues that there were multiple parties and multiple claims in these cases, only some of which were resolved. Accordingly, it asserts, that in the absence of an

10

express determination that there was no just reason for delay and an express directive for entry of judgment, the orders are not final for purposes of appeal.[3]

To be sure, it is a policy of the federal courts to avoid piecemeal appellate review, and Rule 54 (b) orders are not routinely entered. <u>Orion Fin. Corp. v. American Foods Group, Inc</u>., 201 F.3d 1047, 1049 (8th Cir. 2000). Normally, absent an express determination that there is no just reason for delay and an express directive for entry of judgment an order that disposes of less than all of the claims between less than all of the parties is not final for purposes of appeal. *See, e.g.*, <u>Burlington Northern Railroad Co. v. Vair</u>, 754 F.2d 799, 800 (8th Cir. 1985); <u>Farmers State Bank of Nebraska v. Citizens Bank (In re BRTR Partnership</u>), 292 B.R. 188 (D. Neb. 2003); <u>State of Nebraska v. Strong (In re Strong</u>), 293 B.R. 764, 767 (B.A.P. 8th Cir. 2003).

---

[3] Federal Rule of Bankruptcy Procedure 7054 provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

FED. R. BANKR. P. 7054.

11

Although no certification under Rule 54 (b) was obtained the orders clearly expressed a determination for entry of judgment and, by holding the matters in abeyance, indicated there was no reason for delay. The Eighth Circuit has taken the view "that Rule 54 (b) certifications must, either in express words *or by unmistakably clear implication*, contain the findings specifically required by the rule." Bullock v. Baptist Memorial Hosp., 817 F.2d 58, 59 (8th Cir. 1987)(emphasis added); *see also* Kocher v. Dow Chem. Co., 132 F.3d 1225, 1228-29 (8th Cir 1997) (finding that orders "unquestionably were intended to be final for purposes of appeal"); Speer v. City of Wynne, Arkansas, 276 F.3d 980, 987-88 (8th Cir. 2002) ("Where the district court's intent to enter a partial final judgment under Rule 54 (b) is clear, the order is considered appealable.") Here the bankruptcy court made it unmistakably clear that it intended the decisions to be final and determinative of all rights between ADM and Appellees. In such a case, the orders were final even in the absence of an express determination and direction.

Furthermore, even if these orders are not final, there are grounds for granting the interlocutory appeals Safeco has sought.

> In deciding whether to grant a motion for leave to appeal, we typically apply the standards found in 28 U.S.C. § 1292(b) which define the jurisdiction of courts of appeal to review interlocutory orders. Section 1292(b) requires that: (1) the question involved [is] one of law; (2) the question [is] controlling; (3) there exists a substantial ground for difference of opinion respecting the correctness of the [bankruptcy] court's decision; and (4) a finding that an immediate appeal would materially advance the ultimate termination of the litigation.

General Elec. Capital Corp. v. Machinery, Inc. (In re Machinery, Inc.), 275 B.R. 303, 306 (B.A.P. 8th Cir. 2002)(*citing* 28 U.S.C. § 1292(b)). All four factors are present in this case. The issue of the bankruptcy court's jurisdiction is a matter of law controlling the disposition of the cases. Obviously, since this court disagrees with the legal conclusion of the bankruptcy court, a difference of opinion exists and may be

determinative of the outcome of the case. Therefore, even if not final, our review of the orders would be appropriate.

C.       BANKRUPTCY COURT JURISDICTION

1.       THE SAFECO/ADM DISPUTE

Bankruptcy court jurisdiction is governed by 28 U.S.C. §§ 1334 and 157. Section 1334(a) of Title 28 grants original and exclusive jurisdiction of all bankruptcy cases to the district court. Educ. Credit Mgmt. Corp. v. McAlpin (In re McAlpin), 263 B.R. 881, 884 (B.A.P. 8th Cir. 2001) *aff'd* 278 F.3d 866 (8th Cir. 2002). Subsection (b) of § 1334 provides that "the district court shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334 (b). Thus, aside from the bankruptcy case itself, a bankruptcy court has jurisdiction in three categories of proceedings: those that "arise under title 11," those that "arise in cases under title 11," and those "related to cases under title 11." Continental Nat'l Bank of Miami v. Sanchez (In re Toledo), 170 F.3d 1340, 1344 (11th Cir. 1999). District courts may refer all cases and any or all proceedings arising under title 11 to the bankruptcy judges for the district. See 28 U.S.C. § 157; Specialty Mills, Inc. v. Citizens, 51 F.3d 770, 773 (8th Cir. 1995). A district court order of reference is in place in the Western District of Missouri.

Under Title 28, however, jurisdiction does not equate with the right to finally decide the issues. In response to the Supreme Court's decision in Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982), Congress circumscribed those disputes which a bankruptcy judge could finally decide. Section 157 of Title 28 divides civil proceedings in a bankruptcy case into two categories: (1) core proceedings which may be decided by a bankruptcy judge, and (2) non-core proceedings which must be decided by the district court on review of

13

recommendations from the bankruptcy court. 28 U.S.C. § 157(b) and (c). Core proceedings include, but are not limited to–"(A) matters concerning the administration of the estate;" . . . (M) orders approving the use . . . of property; . . . [and] (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." 28 U.S.C. § 157(b)(2)(A), (M) and (O).

"'In general, a core proceeding is a legal dispute between parties in interest to a bankruptcy case, one of whom is almost always the debtor.'" Abramowitz v. Palmer, 999 F.2d 1274, 1276 (8th Cir. 1993)(*quoting* In re Marine Iron & Shipbuilding Co., 104 B.R. 976, 980 (D. Minn. 1989)). "Non-core, related proceedings are those which do not invoke a substantive right created by federal bankruptcy law and could exist outside a bankruptcy, although they may be related to a bankruptcy." Specialty Mills, 51 F.3d at 773.

Stressing the fact that ADM cannot recover against Safeco without establishing that Debtor has breached the Purchase Agreement by not providing Safeco with the required surety bond, Safeco argues that the dispute between it and ADM is not only within the jurisdiction of the bankruptcy court but is a core proceeding. It asserts that the bankruptcy court has jurisdiction to determine the relative rights and obligations of all three parties (principal, surety and obligee) to the ADM bond pursuant to §§ 157(A), (M) and (O) of Title 28. Safeco further contends that its liability will necessarily affect the claims against Debtor and will result in an adjustment of the debtor-creditor relationship between Safeco and Debtor and between ADM and Debtor. In addition, Safeco contends that pursuant to the indemnity agreements, Debtor is contractually bound to Safeco to indemnify it for any loss which it may incur by reason of having issued the ADM bond. Any determination of Debtor's , and necessarily Safeco's, liability to ADM as a result of the adjudication of Safeco's

14

declaratory judgment action will fix and liquidate Safeco's claim against Debtor's bankruptcy estate.

Even though the surety bond is not considered property of the estate, Safeco asserts that the adjudication of the declaratory judgment action will necessarily affect the administration of the estate, involve the use of Debtor's property, and affect the adjustment of the relationships of Debtor with its creditors. Alternatively, Safeco argues that its declaratory judgment action against ADM is related to Debtor's bankruptcy because resolution of that dispute will have an impact on the administration of the bankruptcy estate. Conversely, ADM asserts that there is no relation between the Safeco/ADM dispute over Safeco's actions relating to cancellation of the bond and the Safeco/Debtor dispute over whether Debtor breached the Purchase Agreement by failing to provide ADM with a surety bond.

Clearly, the dispute between ADM and Safeco is neither a case arising under nor arising in a case under title 11. It is not a proceeding arising under title 11 because it does not invoke substantive right created by bankruptcy law. *See e.g.,* National City Bank v. Coopers and Lybrand, 802 F. 2d 990, 993 (8th Cir. 1986); Glinka v. Federal Plastics Mf. (In re Housecraft Indus. USA, Inc.), 310 F.3rd 64, 69 (2nd Cir. 2002); Wood v. Wood (Matter of Wood), 825 F.2d 90, 96 (5th Cir.1987). Safeco's cause of action is also not a "proceeding arising in a case under title 11 because it is not an action that "would have no existence outside of the bankruptcy." *See e.g.,* Grausz v. Englander, 321 F.3d 467, 471 (4th Cir. 2003); Frelin v. Oakwood Homes Corp., 292 B.R. 369, 376 (Bankr. E.D. Ark. 2003). The sole question is whether it is related to a case under title 11.

The authority on which most courts rely in determining whether a non-core proceeding is sufficiently related to the bankruptcy to confer jurisdiction on the bankruptcy court is Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir. 1984), *overruled on other grounds by* Things Remembered, Inc. v. Petrarca, 516 U.S. 124

(1995). In Pacor the Third Circuit held that a dispute between an injured party and Pacor, the supplier of an asbestos related product, was not sufficiently related to the asbestos manufacturer's bankruptcy case to sustain federal bankruptcy court jurisdiction. In so ruling, the court articulated a test that has come to be adopted by numerous other circuits. *See* New Horizon of NY LLC. v. Jacobs, 231 F.3d 143, 151 n.18 (4th Cir. 2000). The Eighth Circuit adopted the Pacor "conceivable effect" test in National City Bank v. Coopers & Lybrand, 802 F.2d 990, 994 (8th Cir. 1986) and applied it again in Dogpatch Properties, Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A., Inc.), 810 F.2d 782 (8th Cir. 1987):

> [T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankrupt estate.

Dogpatch, 810 F.2d at 786 (*citing* Pacor, 743 F.2d at 994).

"On the other hand, the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1471(b) [the predecessor to § 1334]. Judicial economy itself does not justify federal jurisdiction." Pacor, 743 F.2d at 994 "'Jurisdiction over nonbankruptcy controversies with third parties who are otherwise strangers to the civil proceeding and to the parent bankruptcy does not exist.'" In re Asbestos Litigation, 271 B.R. 118, 121 (S.D.W. Va. 2001)(*quoting* In re Haug, 19 B.R. 223, 224-25 (Bankr. D. Ore. 1982)).

In National City Bank, the debtor's note holders had been paid most of their claims in the debtor's reorganization plan, but had specifically reserved their rights

against the debtor's professionals.  The note holders then sued the debtor's accounting firm alleging negligence and other claims under state law.  The circuit court affirmed the district court's determination that it did not have jurisdiction over the action because the action neither arose in or under the bankruptcy case and was not related to it.  In doing so the court referenced the Pacor conceivable effect test and noted its agreement with the Pacor analysis.  National City Bank, 802 F.2d at 994.

Shortly thereafter the Eighth Circuit decided Dogpatch. Dogpatch involved the fallout from a bankruptcy court approved sale gone bad.  When the purchaser of the debtor's mortgaged property sued the debtor, the mortgagees and the guarantors on the mortgage, the mortgagee filed a counterclaim against the purchaser and a third party claim against the guarantors on the mortgage debt.  The Eighth Circuit, reciting the Pacor conceivable effect test, affirmed the district court's determination that it had jurisdiction, not only of the dispute with the Debtor, but also of the dispute between the purchaser, the mortgagee and the guarantors because their liability, lack thereof, or inability to pay could trigger the debtor's liability and duty to pay, thus possibly disrupting the debtor's reorganization.  Dogpatch, 810 F.2d at 786.

Eighth Circuit jurisprudence on this jurisdictional issue was further developed in National Union Fire Insurance Company of Pittsburgh Pa v. Titan Energy, Inc., 837 F.2d 325 (8th Cir. 1988).  In Titan Energy, the court held that a dispute between the debtor and its insurer involving the insurer's claim that the products liability insurance policies written by National Union to protect purchasers of the debtor's plants against claims should be rescinded were related to the bankruptcy case, making clear once again that the bankruptcy court's jurisdiction is broad.  The Eighth Circuit further held that although "[i]t remains to be seen whether, and to what extent, National Union's action will affect Titan's estate . . . even a proceeding which portends a mere contingent or tangential effect on a debtor's estate meets the broad jurisdictional test articulated in Pacor."  Titan Energy, 837 F.2d at 330.

17

This broad view of jurisdiction was recently utilized by the Supreme Court in Celotex Corp. v. Edwards, 514 U.S. 300 (1996). In Celotex the Supreme Court held that a bankruptcy court had jurisdiction to issue an injunction against plaintiffs who had obtained a judgment against the debtor and were seeking to execute on a supersedeas bond the debtor had filed while appealing from the adverse ruling. Celotex, 514 U.S. at 305. The dispute was one between nonparties to the bankruptcy case, the plaintiffs in the products action and the surety on the supersedeas bond. The bond and its proceeds were manifestly not property of the bankruptcy estate. The debtor's collateral which secured payment of the supersedeas bond was, however, both property of the estate and in jeopardy of foreclosure if the plaintiffs were able to collect from the surety.

The Supreme Court held that under these circumstances, and using the Pacor "conceivable effect" test, the bankruptcy court had jurisdiction to issue the injunction because the status of the bonds was an issue related to Celotex's bankruptcy. *Id.* at 308. While the execution on the bonds did not directly involve Celotex, the court nonetheless held the arrangement between Celotex and the surety provided a sufficient basis for jurisdiction. The court noted that loss of the assets securing the bond would have "a direct and substantial adverse effect on Celotex's ability to undergo a successful reorganization" and noted that the fact that Celotex had filed for reorganization under Chapter 11, rather than liquidation, made jurisdiction more likely because "jurisdiction of bankruptcy courts may extend more broadly in [a Chapter 11 case] than in [a Chapter 7] case." *Id*. at 309.

> [T]he decision expands the bankruptcy court's power, asserting that a proceeding against a non-debtor insurance company is sufficiently "related to" the debtor's bankruptcy to come within the court's limited jurisdictional grant. The Court upheld the injunction in Celotex even though the party opposing the injunction argued that the surety's funds to pay the judgment were not property of the bankruptcy estate. The evolution of bankruptcy jurisdiction can be viewed on a continuum from

18

the early days of bankruptcy law, where possession or consent of the property was a prerequisite for jurisdiction, to Celotex, where possession and consent are not required as long as the debtor can articulate a threat to the administration of the bankruptcy estate.

Daniel McCloskey, *Celotex Corp. v. Edwards: The Supreme Court Expands the Jurisdiction of Bankruptcy Courts by Barring Collateral Attacks Against Their Injunctions, But Some Questions Remain Unanswered*, 24 PEPP. L. REV. 1039, 1070-71 (1997); *see also,* New Horizon, supra, 231 F.3d at 150 (under Celotex the language of Section 1334 (b) must be read to give district courts(and bankruptcy courts under Section 157 (a)) jurisdiction over more than simply proceedings involving the property of the debtor or the estate, the case need not be against the debtor or his property).

In this case, Debtor has articulated the requisite threat to the administration of the bankruptcy estate. The dispute between ADM and Safeco is not merely one in which ADM is seeking to obtain the amount of the bond from the surety. Here, it was Debtor's obligation, not that of ADM, to provide a suitable bond in the proper amount. Safeco's only obligation was to pay under the terms of the bond it issued. The dispute between Safeco and ADM necessarily implicates Debtor since ADM cannot recover from Safeco without establishing that Debtor breached its obligations under the Purchase Agreement and while Debtor, not being a party to the Illinois District Court proceedings, may not be bound by decisions made there, that litigation will necessarily trigger ADM's rights to file a claim in the bankruptcy case for the penal sum of five million dollars, a significant sum in any bankruptcy case. If Safeco does so and successfully establishes a right to an administrative expense, Debtor's opportunity to reorganize may be threatened and other creditors will recover less in the case. For all of these reasons, it is clear to us that the resolution of the dispute between ADM and Safeco meets the jurisdictional threshold test of having a conceivable effect on the bankruptcy case. We disagree with the Appellee's argument that there is no jurisdiction because the claim is merely contingent or

subject to further suit.  <u>Titan Energy</u> very much suggests otherwise.  *See also* <u>Lindsey v. O'Brien, Tanski, Tanzer and Young Health Care Prov. (In re Dow Corning Corp.</u>), 86 F.3d 482, 494 (6th Cir. 1996)("The potential for [the debtor] being held liable to the nondebtors in claims for contribution and indemnification, or vice versa, suffices to establish a conceivable impact on the estate in bankruptcy").

We think <u>Celotex</u> dictates this result and that the bankruptcy court too narrowly distinguished it.  The fact that, in <u>Celotex,</u> the insurer held security upon which it could levy if the supersedeas bond was paid was important to the Supreme Court's decision.  Here too, while not exactly comparable, Safeco has a direct claim against Debtor should it be forced to pay the penal amount of the bond and, because of the special facts here, Safeco will likely have an administrative expense claim in the case. We further believe the facts of this case to be closer to those in <u>Dogpatch</u> and <u>Titan Energy</u> and not at all comparable, as Appellee's urge, to <u>National City Bank</u>.  This is not a case such as <u>National City Bank</u> where the nonparties to the dispute had specifically reserved their rights to litigate remaining liability in a nonbankruptcy forum.

As was the case in <u>Dogpatch</u>, the resolution of the Safeco/ADM dispute will necessarily involve a determination of Debtor's liability to ADM and will trigger Debtor's liability to Safeco for indemnity, as a consequence of which there is a conceivable affect on the bankruptcy reorganization.  Given the developments in the law, we also conclude that the bankruptcy court's near complete reliance on <u>Foley Co. v. Aetna Casualty & Surety Co. (In re S & M Const., Inc.)</u>, 144 B.R. 855 (Bankr. W.D. Mo. 1992), was misguided.

ADM asserts that we should be guided by the Third Circuit's decision in <u>In re Federal-Mogul Global, Inc.</u>, 300 F.3d 368 (3rd Cir. 2002).  In <u>Federal-Mogul</u> the court ruled that a district court had not acted improperly in denying a motion to transfer thousands of asbestos related claims by injured parties against suppliers to

20

the bankruptcy court where the manufacturer's bankruptcy was pending nor in remanding such actions to the state courts in which they were originally filed. Appellees point to language in the decision where the court states that "[the ]test articulated in Pacor for whether a lawsuit could 'conceivably have an effect on the bankruptcy proceeding inquires whether the allegedly related lawsuit would affect the bankruptcy proceeding without the intervention of yet another lawsuit.'" Federal-Mogul, 300 F.3d at 382. According to ADM, since Safeco will not be able to establish its indemnity claim against Debtor without a separate lawsuit, the ADM/Safeco lawsuit is necessarily not related to the bankruptcy case.

ADM's reliance on Federal-Mogul is misplaced for several reasons. First, it should be noted that, and as the court itself pointed out, the decision in Federal-Mogul is directly at odds with the Sixth Circuit's decision in Dow Corning where the court ruled that similar pending lawsuits against that debtor should be allowed to proceed in bankruptcy court even though the contribution claims had to be litigated at a later time. Dow Corning, 86 F.3d at 494. Second, and most importantly, while the Third Circuit discussed the Pacor ruling at length and gave every indication that it would make the same ruling if the matter came before it, the court specifically did not decide the jurisdictional issue.[4] The discussion of Pacor was, therefore, dicta, strong though it was. Moreover, we have difficulty squaring the dicta in Federal-Mogul with the Eighth Circuit's decisions on this subject. Third, the case is contrary to a number of other decisions on the same issue. *See* In re WorldCom, Inc. Securities Litigation, 293 B.R. 308, 320 (S.D.N.Y. 2003)("jurisdiction over a third party action exists where a claim for indemnification or contribution arising from that litigation has a conceivable effect on a bankruptcy proceeding."); Michigan

---

[4] The court in Federal-Mogul stated that "[w]e, however, remain a step away from reaching the merits of whether the District Court has 'related to' jurisdiction. Instead, because our appellate jurisdiction is at issue, we review the District Court's denial of Defendants' transfer motion in the context of deciding whether to grant a writ of mandamus." Federal-Mogul, 300 F.3d at 384.

21

Employment Sec. Comm'n v. Wolverine Radio Co., Inc.(In re Wolverine Radio Co.), 930 F.2d 1132, 1143 (6th Cir. 1991)(holding that a contractual indemnification provision supported jurisdiction even though the debtor "would not be affected until and unless [the third party] invoked the indemnification" provision);  Arnold v. Garlock, Inc., 278 F.3d 426, 440 (5th Cir. 2001) (generally approving of "related to" jurisdiction for contribution claims in the mass tort context, but declining to enter stay of the remand of third-party actions where the removing defendant had not shown a likelihood of success on any contribution claim); Randall & Blake, Inc. v. Evans (In re Canion), 196 F.3d 579, 586-87 (5th Cir. 1999) (third party litigation that might decrease the claims against the estate is related to bankruptcy); A.H. Robins v. Piccinin, 788 F.2d 994, 1001 (4th Cir. 1986) (actions are related to bankruptcy when brought against officers of debtor who may be entitled to indemnification under debtor's insurance policy).  And finally, the defendants in Federal-Mogul (as did the Defendant in Pacor) had claims for contribution that had to be the subject of separate litigation between them and the debtor manufacturer.  The initial suits between the claimants and the suppliers would not necessarily bring into question factual issues regarding the liability of the manufacturer.  Nor did the claimants, like Safeco, have the immediate right to make a claim for an administrative expense in the bankruptcy case should they be found liable in the underlying lawsuits.  For all these reasons, we decline to follow the court's reasoning in Federal Mogul.

2.    THE SAFECO/INTERSTATE CARRIERS DISPUTE

In this dispute, Safeco proposed to interplead money into the bankruptcy court so that the bankruptcy court could resolve the claims of various creditors to this finite pool.  It sought a declaration that doing so would relieve it of any further liability to the claimants. The facts of the Safeco/Interstate Carriers Dispute strongly suggest the existence of a core proceeding, but it is certainly "related to" the bankruptcy case and it is upon the same grounds as discussed above that we also reverse the FHA order. Although the interpleader action does not, in and of itself, create a property interest

22

of Debtor or the estate, it "will resolve conflicting claims and distribute the fund among the claimants" that might otherwise have a claim against the estate. Lovett v. Honeywell, Inc. (In re Transportation Systems Intern., Inc.), 110 B.R. 888, 895 (D. Minn. 1990) *aff'd,* 930 F.2d 625 (8th Cir. 1991). Payment of the interpled amount to Debtors' creditors could alter Debtor's liabilities and impact upon the handling and administration of the bankrupt estate. Pacor, 743 F.2d at 994. The dispute is, therefore, related to the bankruptcy case and meets the test established by Pacor.

CONCLUSION

For the reasons stated we reverse the bankruptcy court's rulings that it was without jurisdiction to resolve the disputes between Safeco and ADM and the interstate carriers. These disputes were at a minimum related to the bankruptcy case. Resolution of this issue renders moot the remaining issue raised on appeal, whether the bankruptcy should have held the separate claims against Debtor in abeyance pending resolution of the disputes between Safeco and ADM and the Interstate Carriers. We also express no opinion on whether abstention would be appropriate under the circumstances of the case. *See* 28 U.S.C. § 1334(a)(1)(2); Titan Energy, supra, 837 F.2d at 330-333.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL, EIGHTH CIRCUIT

23