In re POLAROID CORPORATION, et al, Debtors. (includes: Polaroid Holding Company; Polaroid Consumer Electronics, LLC; Polaroid Capital, LLC; Polaroid Latin America I Corporation; Polaroid Asia Pacific LLC; Polaroid International Holding LLC; Polaroid New Bedford Real Estate, LLC; Polaroid Norwood Real Estate, LLC; Polaroid Waltham Real Estate, LLC)

Polaroid Corporation and Polaroid Consumer Electronics, LLC, Plaintiffs,

v.

Acorn Capital Group, LLC, as Lender and as Administrative and Collateral Agent, Defendant.

Bankruptcy Nos. 08–46617, 08–46621(GFK), 08–46620(GFK), 08–46623(GFK), 08–46624(GFK), 08–46625(GFK), 08–46626(GFK), 08–46627(GFK), 08–46628(GFK), 08–46629(GFK).

Adversary No. 09–4031.

United States Bankruptcy Court, D. Minnesota.

Nov. 23, 2009.

George H. Singer, James A. Lodoen, Nicole Siemens, Sandra S. Smalley–Fleming, Terrence J. Fleming Lindquist & Vennum P.L.L.P., Minneapolis, MN, for Plaintiffs.

Daniel C. Beck, Michael Rosow, Winthrop & Weinstine PA, Thomas H. Boyd, Theresa H. Dykoschak, Faegre & Benson LLP, Minneapolis, MN, for Defendant.

## ORDER GRANTING PLAINTIFFS' MOTION FOR DISMISSAL OF DEFENDANT'S COUNTERCLAIM, IN PART

GREGORY F. KISHEL, Bankruptcy Judge.

At St. Paul, Minnesota, this 23rd day of November, 2009.

This adversary proceeding came on before the Court for hearing on the Plaintiffs' motion for dismissal of the Defendant's counterclaim. The Plaintiffs appeared by their attorney, Sandra S.

Smalley–Fleming. The Defendant appeared by its attorney, Thomas H. Boyd.

This adversary proceeding was commenced in February, 2009. At that time, the named plaintiffs (the Polaroid Corporation and Polaroid Consumer Electronics, LLC, collectively "the Polaroid Plaintiffs") were debtors-in-possession under Chapter 11.[1] When the Polaroid Plaintiffs filed for bankruptcy, the Defendant ("Acorn") claimed a security interest in significant assets of theirs, including inventory and accounts held or sited in the United States and trademarks and associated rights in the United States, Canada, and Mexico.

Via this adversary proceeding, the Polaroid Plaintiffs sought, in the main, to avoid or otherwise nullify Acorn's liens.[2] Their main theory was that the taking of the security interests constituted fraudulent transfers as to the Polaroid Plaintiffs' creditors. They cited both Minnesota state law and federal bankruptcy law. Toward the same end, they requested other forms of relief: the disallowance of Acorn's claim in their bankruptcy cases; the avoidance of Acorn's lien in consequence of any such disallowance; the equitable subordination of Acorn's claim; the recharacterization of Acorn's claim as equity rather than debt; and/or the nullification of Acorn's lien under more general equitable principles.

An involved series of events and circumstances is pleaded in support of these requests. However, the factual theory can be summed up simply enough: the Polaroid Plaintiffs were induced by the individual in control of them (Thomas J. Petters) to encumber their own assets to Acorn, in order to provide additional security for preexisting debts owed to Acorn by another company in Petters's business structure (PAC Funding, LLC). This, it is alleged, was done in early 2008, after Acorn discovered that Tom Petters and PAC Funding had misrepresented the existence and quality of assets originally proffered and given to Acorn as collateral for earlier loans to PAC Funding. The cause for avoidance or subordination would be that the Polaroid Plaintiffs received nothing to their benefit from pledging their assets for third-party debt on which they had had no legal obligation, and that Petters and Acorn knew that and still proceeded.[3] The resulting expropriation of value would be redressed by one or more of the remedies requested.[4]

Through counsel, Acorn interposed its answer in March, 2009. The answer is lengthy like the complaint; but, it directly tracks the complaint's organization and it specifies Acorn's responses to the complaint's averments. Acorn addresses the requests for relief in the complaint's eleven

---

1. Since the hearing on the motion at bar, the cases of the named plaintiffs and the other debtors in this grouping of jointly-administered cases were converted to Chapter 7. John R. Stoebner, Esq., was appointed as Trustee. He will be formally substituted as party-plaintiff in due course.

2. They requested other relief, including the avoidance of an April 9, 2008 wire transfer of some fifteen million dollars from the Polaroid Corporation, which Acorn ultimately received. Those requests for relief are not directly implicated by the motion at bar, and need not be explored now.

3. As to the remaining requirement of fraudulent-transfer theory, it is alleged that this was done at a time when the Polaroid Plaintiffs were insolvent, or they became insolvent as a consequence.

4. In the late spring of 2009, the component assets were sold pursuant to 11 U.S.C. §§ 363(a) and 363(f). Thus, any avoidance remedy here would be applied to the "replacement lien" that had been impressed on the cash proceeds as a condition of the sale.

separately-numbered counts. It pleads a dozen affirmative defenses, under the avoidance statutes plus boilerplate equitable theories.

Then, Acorn pleads a counterclaim, seeking to vindicate its asserted "valuable and enforceable lien in the [Polaroid Plaintiffs'] assets." It describes a series of financing-related transactions that had commenced in November, 2004, involving itself, PAC Funding, and then the Polaroid Plaintiffs. Acorn states that it first took a security interest in PAC Funding's assets, to secure all advances that Acorn was to make to PAC Funding under a revolving loan agreement. This collateral included PAC Funding's accounts, contract rights, and promissory notes. Then, Acorn alleges, an advance of approximately $15,000,000.00 was made under PAC Funding's credit facility on March 4, 2008, with payment wired directly to Plaintiff Polaroid Consumer Electronics at PAC Funding's request. In connection with that, the Polaroid Plaintiffs granted security interests in their United States inventory and accounts, first to PAC Funding and then to Acorn directly. Per Acorn, a second, similarly-structured,-routed, and -secured advance of $10,000,000.00 followed in mid-April, 2008. After that, in mid-May, 2008, the Polaroid Plaintiffs and Acorn executed documents under which the Po-

laroid Plaintiffs "absolutely and unconditionally guaranteed the payment of *all* amounts owing to Acorn *pursuant to the PAC [Funding] credit agreement*" (emphasis added), and the Polaroid Plaintiffs granted Acorn a security interest in their trademarks in the United States, Canada, and Mexico.[5]

On these stated facts, Acorn maintains that it had "valid and enforceable liens in [the Polaroid Plaintiffs'] assets." Acorn states that its secured rights derived from its "direct interest," i.e., the Polaroid Plaintiffs' grants of liens, and its "indirect interest," i.e., its liens in PAC Funding's contractual and secured rights as a creditor of the Polaroid Plaintiffs.[6] So, as its relief on its counterclaim, Acorn seeks a declaratory judgment that it has "a valid and enforceable lien in [the Polaroid Plaintiffs'] assets, derived from [its] direct interest ... and [its] indirect interest in" those assets.

The Polaroid Plaintiffs move to dismiss Acorn's counterclaim. Predictably, Acorn strenuously resisted the motion.

Initially, it must be recognized that Acorn seeks relief as to two distinct legal issues; the counterclaim encompasses requests for two different declaratory judgments[7]. Acorn's response does not

---

5. Apparently, the wire transfer that is now attacked as preferential, was linked to the March 4, 2008 advance, and satisfied the affiliated debt. This raises the possibility that the associated pledge of inventory and accounts was no longer supported by a debt obligation after that. It is not entirely clear whether the earlier encumbrance is at issue in this adversary proceeding. The gist of both sides' pleadings is that only the security interests in trademarks are in contest. However, Acorn does claim a lien in "Accounts, Inventory, Trademarks and Proceeds" in the bare-bones content of its proof of claim [no. 51, filed on March 12, 2009].

6. At this time, PAC Funding holds an allowed secured claim against the Polaroid Plaintiffs, memorialized under claim no. 121 in the underlying cases. Thus, Acorn's asserted "indirect interest" would be that of a lienor-of-a-lienor; presumably, Acorn would succeed to its own debtor's secured status were it to foreclose its "direct" lien against PAC Funding. That is not being allowed at present, because PAC Funding is a debtor under Chapter 11 as well, in case no. 08–45371 (one of those being jointly-administered under *In re Petters Company, Inc., et al.*, BKY 08–45257).

7. The Polaroid Plaintiffs correctly observed this in their briefing and argument.

expressly concede the point, but its arguments tend to cluster along the lines of the analysis. As it turns out, the outcome on the motion splits on the same lines.

■ The first prong of the counterclaim goes to Acorn's "direct interest," i.e., the security interest in trademarks and associated rights that the Polaroid Plaintiffs themselves granted to Acorn in May, 2008. As to this request, the Polaroid Plaintiffs frame their motion for dismissal under both FED.R.CIV.P. 12(b)(6) (allowing for dismissal of a claim for relief "for failure to state a claim on which relief can be granted") and FED.R.CIV.P. 12(f) (empowering the court to "strike from a pleading ... any redundant [or] immaterial ... matter").[8] But, neither their briefing nor their oral presentation articulated a theory on which Acorn's counterclaim was legally deficient on its pleaded facts. Thus, there is no basis for dismissal under Rule 12(b)(6).[9]

■ Thus, as to that prong of the counterclaim, the motion rests solely on the argument that the request for relief is "redundant," i.e., that in seeking a declaratory judgment on the validity and enforceability of its "direct interest," Acorn "merely seek[s] resolution of matters that will be resolved as part of the claims that are already in the lawsuit." In support, counsel cites a number of recent decisions issued out of United States district courts from other districts, reported only in the electronic legal research services. None of these rulings have precedential effect here. And generally they stand for no more than a permissive authority in the court, to excise defendants' "redundant" requests for declaratory judgment where they would only mirror adjudications necessarily made in disposition of plaintiffs' claims.

That is not quite the case here, however. The main, frontal assault on Acorn's secured position-avoidance as a fraudulent transfer—does not implicate Acorn's technical compliance with the underlying legal requirements for a grant of lien under Article 9 of the Uniform Commercial Code. Adjudicating the demand for avoidance would not require a formal, threshold ruling that the transfer of the lien had been regular on its face, standing alone.

The case is a bit closer as to the other theories on which the Polaroid Plaintiffs would have Acorn's secured status nullified. They seek to have Acorn's claim disallowed under 11 U.S.C. § 502(b)(1).[10] Their theory is broadly-pleaded, and might be construed to go to the liens' validity in the first instance. Their own request for a declaratory judgment in equity, to have Acorn's security instruments "declared null, void, and unenforceable," would or could require initial, subsidiary determinations as to the original propriety of these security interests under nonbankruptcy law. However, the findings and legal rulings made as the openers on these counts would not necessarily require a formal

---

8. Both of these rules are incorporated by FED. R. BANKR.P. 7012(b) for application in adversary proceedings in bankruptcy cases.

9. The Polaroid Plaintiffs' brief includes a boilerplate, toss-off reference to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court's recent reformulation of the standard for dismissal under Rule 12(b)(6). Because no argument is essayed under the "plausibili-

ty" analysis of *Twombly* and *Ashcroft v. Iqbal*, ―― U.S. ――, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), it is not necessary to apply Rule 12(b)(6) on its merits.

10. i.e., on the ground that the claim and its security aspects are "unenforceable against" the Polaroid Plaintiffs and their property "under ... applicable law."

judgment of validity, in a form that would foreclose further challenges to Acorn's position under some other theory. The holdings might only be formulated as resolutions of discrete *issues*, which could later be invoked under the rubric of collateral estoppel, but they might not be classifiable as a full adjudication of the *claim* of validity, so as to trigger res judicata.

So, Acorn's counsel's observation is correct: the denial of all relief on the complaint in this adversary proceeding would not invariably entail a determination that Acorn's lien was valid beyond *all* challenge, or equate to one such.[11]

Perhaps the Polaroid Plaintiffs' thought is that the functional overruling of the objection to Acorn's claim, as asserted in bankruptcy, would restore Acorn to the status of holder of an allowed secured claim, as established by their filed proof of claim.[12] That might work, if the only means for the recovery of the value from Acorn's claimed security were the bankruptcy process. However, Acorn cannot be faulted for seeking a discrete, pointed adjudication in its favor, were the claims against it to fully fail, which it could exploit in the bankruptcy process in the underlying cases or could parlay for possible collateral application.[13] As Acorn's counsel urges, with all parties and the court getting so deeply into the facts through a plenary airing of the complaint's broad theories, his client really should be allowed its final vindication if the case under the complaint fails.

So it just does not conduce, to dismiss Acorn's request for declaratory judgment as redundant of the Polaroid Plaintiffs' request to avoid Acorn's "direct interest." The motion for dismissal must be denied, in that part.

The second prong of Acorn's counterclaim raises different and more abstruse issues on this motion. The reason is that this prong would require two stages of adjudication for a full resolution.

■ The first question would be the validity of Acorn's lien against *PAC Funding's* assets This issue is not even cognizable in the Polaroid Plaintiffs' bankruptcy cases: it does not arise out of a debtor-creditor relationship to which the Polaroid Plaintiffs are a contractual or legal party, and it does not concern assets of their bankruptcy estates. Hence, this component of the counterclaim cannot constitute a "core proceeding" in the cases underlying this adversary proceeding, in the jurisdictional terms of 28 U.S.C. § 1334(b) and the classifications of 28 U.S.C. §§ 157(b)(1)-(3).

An attenuated argument could be made that the outcome on the issue, in the abstract, "could conceivably have [an] effect on the estate being administered in bankruptcy," and hence a lawsuit involving these issues falls within related-proceeding jurisdiction under 28 U.S.C. § 1334(b) and the classifications of 28 U.S.C. §§ 157(b)(3) and 157(c). *See, e.g., Celotex Corp. v. Edwards,* 514 U.S. 300, 307–308, 115 S.Ct.

---

**11.** At the hearing, Acorn's counsel asked the Polaroid Plaintiffs' counsel for a concession to that effect; but it was not forthcoming on the record.

**12.** Litigation counsel for the Polaroid Plaintiffs did not articulate it this way at all, but that is one possible drift from the structure of her clients' theories of suit.

**13.** And there is one possible collateral application. Acorn still maintains an appeal from the order authorizing the sale of the bulk of the Polaroid assets free and clear of its liens. The appeal is now pending in the Eighth Circuit Court of Appeals; and there Acorn apparently is invoking *In re PW, LLC,* 391 B.R. 25 (9th Cir. BAP 2008) to argue that its lien still attaches to the trademarks as they repose in the ownership of the purchaser.

1493, 131 L.Ed.2d 403 (1995); *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 773–774 (8th Cir.1995); *In re Titan Energy, Inc.*, 837 F.2d 325, 329–330 (8th Cir.1988); *In re Dogpatch U.S.A., Inc.*, 810 F.2d 782, 786 (8th Cir.1987); *Nat'l City Bank v. Coopers and Lybrand*, 802 F.2d 990, 994 (8th Cir.1986). However, without the presence of PAC Funding, the essential party-respondent whose interests would be directly impacted by the adjudication, it certainly could not go forward— and Acorn has identified no conceptual machinery through which PAC Funding could defensibly be made a party. If a judicial determination were to be made on this component issue, it would have to be sought in PAC Funding's bankruptcy case.[14]

▆▆▆ The second question would be the validity and enforceability of PAC Funding's lien against the Polaroid Plaintiffs' assets. This issue is beyond the scope of those raised by the complaint in this adversary proceeding. PAC Funding's liens against the Polaroid Plaintiffs' assets are not called into question by the complaint here; only those liens that the Polaroid Plaintiffs directly granted to Acorn are. Thus, the issue is simply not material to the litigation as the Polaroid Plaintiffs have framed it. With the same thought but under a different theory, the second prong is not a compulsory counter-claim cognizable in this adversary proceeding, under the specifications of Rule 13(a)(1).[15] The subject matter of the Polaroid Plaintiffs' claim, i.e., the "transaction or occurrence," is the direct grant of security interests in trademarks to Acorn in May, 2008—nothing more, nothing else. The "indirect interest" was extracted by Acorn earlier, from another entity entirely, and in a different "transaction or occurrence" for the purposes of Rule 13. And, continuing that thought, if analyzed as a permissive counterclaim under Rule 13(b), Acorn lacks direct standing to sue on the issue. It does not presently hold the lien in question, and hence it has no presently-cognizable stake in the outcome of a contest over the lien's enforceability. *E.g. Jewell v. United States*, 548 F.3d 1168, 1173 (8th Cir.2008) (discussing constitutional and prudential standing; and noting as to prudential standing, that "a litigant must assert his or her own legal rights and interest, and cannot rest a claim to relief on the legal rights or interests of third parties").[16]

Because Acorn lacks standing on one of the two components of the second prong of its counterclaim, that prong does not state a claim on which relief may be granted to Acorn. In any event, in the context of this case, there is no jurisdiction over the other component. So, the Polaroid Plaintiffs'

---

**14.** This observation is not to be taken as a ruling that jurisdiction would lie in that context, either; the issue of jurisdiction there is not ripe, in Article III terms.

**15.** Under the current text of the rule, a compulsory counterclaim is one that:

(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and

(B) does not require adding another party over whom the court cannot acquire jurisdiction.

The subject matter of the Polaroid Plaintiffs' claim is the direct grant of lien, the Polaroid Plaintiffs to Acorn, and that alone.

**16.** Acorn's counsel kept going back to his client's asserted "right to enforce obligations on behalf of PAC [Funding]," under the Acorn–PAC Funding security agreement and Article 9. This argument elides one crucial thing: this is a default remedy, to be exercised against collateral after foreclosure of the enabling security interest. Acorn has pled nothing to the effect that its rights as a secured party had ripened that far before PAC Funding's bankruptcy filing.

motion for dismissal must be granted as to Acorn's other request for declaratory relief.

IT IS THEREFORE ORDERED:

1. That portion of the counterclaim of Defendant Acorn Capital Group, LLC, in which it seeks a declaratory judgment that it has a valid and enforceable lien in the Plaintiffs' assets, derived from its asserted security interest in the assets of PAC Funding, LLC, is dismissed.

2. The Plaintiffs' motion for dismissal of the Defendant's counterclaim is denied, in all other respects.